UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| CHRISTOPHER A. SHELTON,<br>        Plaintiff,<br><br>v.<br><br>REAL TIME RESOLUTIONS, INC.<br>        Defendant,<br><br>And<br><br>UNITED STATES OF AMERICA,<br>STATE OF MAINE, DEUTSCHE BANK<br>NATIONAL TRUST COMPANY AS<br>TRUSTEE FOR SOUNDVIEW HOME<br>LOAN TRUST 2007-1 ASSET-BACKED<br>CERTIFICATES SERIES 2007-1,<br>TOWN OF YARMOUTH,<br>WILLIAM SWARTZBAUGH,<br>QUANG NGUYEN and<br>JEFFREY HARDER,<br>        Parties-in-Interest. | Case No. 2:25-CV-00236-NT |

**MOTION OF REAL TIME RESOLUTIONS, INC. TO DISMISS
PURSUANT TO FED. R. CIV. P. 12(b)(6) WITH
<u>INCORPORATED MEMORANDUM OF LAW</u>**

CHRISTOPHER A. SHELTON ("**Plaintiff**") asks this Court for relief to which he is not entitled.  The Plaintiff alleges five (5) claims against Real Time Resolutions, Inc. ("**Defendant RTR**") regarding a promissory note and mortgage that the Plaintiff granted on certain real property in Yarmouth, Maine.  However, the Plaintiff – by his own admission – entered into a court-approved settlement of a prior civil action that involved the same parties and the same common nucleus of operative facts; therefore, the doctrine of *res judicata* bars the Plaintiff's claims in the above-captioned action

because the Plaintiff could have raised those claims in the prior civil action. Further, each of the Plaintiff's five (5) claims fails as a matter of law for a variety of reasons including lack of substantial controversy, statute of limitations and failure to plead facts to support the claims. For these reasons, Defendant RTR respectfully moves pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the Plaintiff's claims against Defendant RTR and to dismiss Defendant RTR from the above-captioned action. In support of this motion to dismiss, Defendant RTR states as follows.

## STATEMENT OF MATERIAL FACTS

1.      Plaintiff is an individual who held an interest in a certain parcel of land located at 314 Cousins Street, Yarmouth, Cumberland County, Maine ("**Property**"). <u>Complaint</u> dated May 12, 2025 ("Complaint"), ¶ 19.

2.      As of the date of this motion, none of the parties to the above-captioned action hold an interest in the Property.[1]

3.      On December 8, 2006, the Plaintiff granted to Mortgage Lenders Network USA, Inc. a secondary mortgage on the Property in the original principal amount of $73,600.00 (the "**Second Mortgage**"), which mortgage was recorded on December 14, 2006 in the Cumberland County Registry of Deeds ("**Registry**") in Book 24660, Page 205. <u>Complaint</u>, ¶¶ 19-22.

4.      Defendant RTR was the holder of the Second Mortgage on the Property by

---

[1]  On June 30, 2025, the Plaintiff conveyed title to the Property was conveyed to a third party by warranty deed, said deed recorded on July 2, 2025 in the Cumberland County Registry of Deeds (the "Registry") in Book 41555, Book 130. Also on June 30, 2025, Defendant RTR executed a discharge of its second mortgage on the Property, said discharge recorded on July 9, 2025 in Registry in Book 41567, Page 323.

virtue of an unrecorded assignment and recorded a Lost Assignment Affidavit dated October 25, 2023 and recorded in the Registry in Book 40468, Page 131. <u>Complaint</u>, ¶ 46.

5.      On September 9, 2024, MERS executed an assignment of the Second Mortgage to Defendant RTR, said assignment recorded in the Registry on September 10, 2024 in Book 40982, Page 186. <u>Complaint</u>, ¶ 49.

### The 2023 U.S. District Court Action

6.      On April 18, 2023, the United States of America filed with this Court a complaint against the Plaintiff, Defendant RTR and various other parties, commencing case no. 23-CV-00173-SDN (the "**2023 Action**").

7.      The United States of America filed the 2023 Action for the purpose of reducing to judgment unpaid federal tax liabilities that the Plaintiff and Joanna Shelton owed and for the purpose of enforcing the related federal tax liens against the Property that the Plaintiff then owned. <u>Complaint</u>, ¶ 56.

8.      In the 2023 Action, the United States of America named the above-captioned parties-in-interest, along with Mortgage Lenders Network, USA, Inc., as defendants. 2023 Action Complaint dated April 18, 2023 ("2023 Action Complaint").

9.      In the 2023 Action, Defendant RTR filed a motion to substitute itself for party defendant Mortgage Lenders Network USA, Inc. Motion to Substitute Party dated November 3, 2023 [ECF No. 49].

10.      On November 6, 2023, the Court granted Defendant RTR's motion to substitute as no party had filed an objection. Order granting Motion to Substitute dated

November 6, 2023 [ECF No. 51].

11.    On February 28, 2024, all of the parties to the 2023 Action – with the exception of the Plaintiff and Joanna Shelton – filed with the Court a "Stipulation Regarding Priority of Lienholder Parties" (the "**Stipulation**"). Stipulation filed Jointly and Regarding Priority of Lienholder Parties by United States dated February 28, 2024 [ECF No. 80], a true and accurate copy is attached hereto and incorporated herein as Exhibit A.

12.    The Stipulation does the following:

   a.    Memorializes the terms of the agreement between the United States of America and the defendant lienholders for distribution of the proceeds of the sale of the Property in the event that the United States of America successfully secured an order of sale of the Property;

   b.    Allows that Defendant RTR would receive the sum of $110,000.00 or $115,000.00 depending on the date of resolution of the United States' sale of the Property; and

   c.    Includes the following language: "[t]he Sheltons have not responded to an inquiry as to whether they will object and, in any event, **this stipulation is not intended to preclude claims or defenses they may be otherwise entitled to raise**."

**Stipulation**, ¶¶ 5, 5(d) and preamble (emphasis added), respectively.

13.    On March 8, 2024, the Court entered the Stipulation as an order of the Court (the "**Stipulation Order**").  Order on Stipulation Regarding Priority of Lienholder

Parties [ECF No. 80], a true and accurate copy is attached hereto and incorporated herein as Exhibit B.

14.    As part of the Stipulation Order, the parties to the 2023 Action agreed that Defendant RTR would receive $115,000.00 from the sale of the Property – an amount less than the full debt owed to Defendant RTR – in order to discharge the Second Mortgage.  Stipulation Order [ECF No. 80].

15.    On May 8, 2024, the Court in the 2023 Action granted the motion of the United States of America for judgment on the pleadings.  Judgment in favor of Plaintiff United States of America dated May 8, 2024 ("**Judgment**") [ECF No. 92], a true and accurate copy of the Judgment is attached hereto and incorporated herein as Exhibit C.

**The Shelton Bankruptcy**

16.    On July 2, 2024, the Plaintiff and Joanna Shelton filed with the U.S. Bankruptcy Court for the District of Maine (the "Bankruptcy Court") a Chapter 13 petition, commencing case no. 24-20136 (the "**Shelton Bankruptcy Case**").  Chapter 13 Voluntary Petition dated July 2, 2024 [Bankruptcy ECF ("BECF") No. 1.]

17.    In the Shelton Bankruptcy Case, the Plaintiff and Joanna Shelton listed Defendant RTR as a creditor of their bankruptcy estate.  Schedules and Summaries dated July 29, 2024 [BECF No. 17].

18.    In the Shelton Bankruptcy Case, the Plaintiff and Joanna Shelton listed Defendant RTR as a creditor who held a secured claim against the Property, a claim they disputed.  Schedules and Summaries dated July 29, 2024 [BECF  No. 17], Schedule D.

19.    On September 10, 2024, Defendant RTR filed in the Shelton Bankruptcy Case its proof of claim regarding the Second Mortgage and Property.  Real Time Resolution, Proof of Claim dated September 10, 2024, Claim 15-1.

20.    On August 27, 2024, Defendant RTR filed with the Bankruptcy Court an objection to confirmation of the Chapter 13 plan of the Plaintiff and Joanna Shelton. Objection to Confirmation of the Plan filed by Real Time Resolutions, Inc. dated August 27, 2024 [BECF No. 32].

21.    In the Shelton Bankruptcy Case, the United States of America, the Chapter 13 trustee and Maine Revenue Services also filed objections to the Chapter 13 plan of the Plaintiff and Joanna Shelton.  Shelton Bankruptcy Case, [BECF Nos. 38, 36 and 37, respectively].

22.    Before the Bankruptcy Court held a hearing on the Chapter 13 plan of the Plaintiff and Joanna Shelton, on September 10, 2024, the Bankruptcy Court granted Debtors' motion to dismiss the Shelton Bankruptcy Case.  Order Dismissing Case dated September 10 2024 [BECF No. 47].

23.    On November 19, 2024, the Bankruptcy Court for the Shelton Bankruptcy Case entered a final decree discharging the Chapter 13 trustee and closing the case. Fina Decree dated November 19, 2024, [BECF No. 51].

### Resumption of the 2023 Action

24.    On October 1, 2024, the parties to the 2023 Action filed with the Court a post-judgment stipulation (the "**Post-Judgment Stipulation**").  Stipulation of the Parties dated October 1, 2024, [ECF No. 102], a true and accurate copy if attached hereto and

incorporated herein as Exhibit D.

25.    Pursuant to the terms of the Post-Judgment Stipulation, the parties to the 2023 Action agreed to the following:

    a.  The Plaintiff and Joanna Shelton had voluntarily dismissed the Shelton Bankruptcy Case;

    b.  The Plaintiff and Joanna Shelton agreed to waive any right to challenge the Court's May 8, 2024 order granting the motion of the United States of America for judgment on the pleadings including "appealing the judgment or challenging the judgment in District Court by, for example, refiling their motion under Rule 52(b) and Rule 59";

    c.  The Plaintiff and Joanna Shelton would make required payments to all lienholders of the Property, including Defendant RTR;[2] and

    d.  The Plaintiff and Joanna Shelton were allowed to sell the Property pursuant to specified terms.

Post-Judgment Stipulation [ECF No. 102].

26.    On October 17, 2024 the Court in the 2023 Action entered an order incorporating the Post-Judgment Stipulation terms and ordering the 2023 Action be

---

[2] Footnote 1 of the Post-Judgment Stipulation reads that the Plaintiff and Joanna Shelton "may still challenge [Defendant] RTR's interest in the Property." CITE  However, that language is incongruous with other events in the 2023 Action.  First, on May 8, 2024 the Court entered final judgment.  CITE Second, in the October 1, 2024 Post-Judgment Stipulation, the Plaintiff and Joanna Shelton agree to waive their right to challenge the May 8, 2024 judgment.  CITE  Third, in its October 17, 2024 order regarding the Post-Judgment Stipulation, the Court does not state that the Plaintiff and Joanna Shelton have any right to challenge Defendant RTR's interest in the Property.  CITE  In short, the Plaintiff and Joanna Shelton had the right to challenge Defendant RTR's interest in the Property up until May 8, 2024 when the Court entered final judgment.  After May 8, 2024, the Plaintiff and Joanna Shelton only had the right to ask the Court to reconsider the judgment, a right they surrendered in the Post-Judgment Stipulation.  Therefore, the language in footnote 1 of the Post-Judgment Stipulation stating that "the Sheltons may still challenge RTR's interest in the Property" is contradicted by other events in the 2023 Action.

held in abeyance until either (a) the Plaintiff and Joanna Shelton sold the Property or (b) the United States of America filed a motion to appoint a receiver based upon the Plaintiff and/or Joanna Shelton's default under the stipulation. Order Granting Motin for Order to Hold Case in Abeyance dated October 17, 2024 [ECF No. 105], a true and accurate copy of the Order is attached hereto and incorporated herein as Exhibit E.

27.    On June 30, 2025, the Plaintiff sold the Property. Notice dated July 18, 2025 [ECF No. 116].

## The Current Civil Action

28.    On May 12, 2025 – i.e., one (1) year and four (4) days after the Court entered final judgment in the 2023 Action – the Plaintiff filed with this Court his complaint against Defendant RTR, naming others as "[p]arties in interest": United States of America, "State of Maine," Deutsche Bank National Trust Company as Trustee for Soundview Home Loan Trust 2007-1 Asset-Backed Certificates Series 2007-1, Town of Yarmouth, William Swartzbaugh, Quang Nguyen and Jeffrey Harder (the "**Complaint**"). Doc. No. 1.

29.    In the Complaint, the Plaintiff alleges five (5) causes of action against Defendant RTR:

   a. Declaratory judgment;

   b. Violation of the Truth-in-Lending Act;

   c. Violation of the Fair Debt Collection Practices Act;

   d. Breach of the covenant of good faith; and

   e. Slander of title.

Complaint, pp. 10, 11, 12, 14 and 16, respectively.


## CONCLUSIONS OF LAW

30.     For the following reasons, this Court should dismiss the Plaintiff's claims

against Defendant RTR for failure to state a claim upon which relief can be granted.

**Legal Standard for Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)**

31.     Dismissal of a complaint is proper if the complaint fails to state a claim

upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  To survive a motion to

dismiss, a complaint must contain sufficient factual material, accepted as true to "state a

claim of relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

570 (2007).  Rule 12(b)(6) demands more than "an unadorned, the-defendant-

unlawfully-harmed-me accusation."  *Gianfrancesco v. Town of Wrentham*, 712 F.3d 634,

639 (1st Cir. 2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 883 (2009)).  A complaint that

"offers labels and conclusions or a formulaic recitation of the elements of a cause of

action" or "tenders naked assertions devoid of further factual enhancement" does not

contain sufficient factual material.  *Hofland v. Governor*, CV-09-162 B-W, 2009 WL

1859279 (D. Me. June 25, 2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557

(2009)).  Plausibility requires more than a sheer possibility that a defendant has acted

unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A plaintiff's complaint must be

dismissed if it does not contain sufficient factual material that makes it plausible rather

than merely conceivable that his claims are viable. *Bell Atlantic Corp. v. Twombly*, 550

U.S. 544, 570 (2009).  In assessing the sufficiency of the allegations in a complaint, "an

inquiring court need not give weight to bare conclusions, unembellished by pertinent facts." *Shay v. Walters*, 702 F.3d 76, 82 (1st Cir. 2012).

32.     For purposes of deciding this motion to dismiss, this Court may take judicial notice of the pleadings and orders filed in the 2023 action as well as the documents filed with the Registry that pertain to the parties' dispute as to the Property. Under the general rule, a court must decide a motion to dismiss "solely on the face of the complaint, without any consideration of any other documents." *Fortune v. Town of Winslow*, 607 F. Supp. 3d  29, 34 (D. Me. June 13, 2022); citing *Cebollero-Bertran v. P.R. Aqueduct and Sewer Auth.*, 4 F.4th 63, 69 n.4 (1st Cir. 2021); *Doe v. Pawtucket Sch. Dep't*, 969 F.3d 1, 8 (1st Cir. 2020).  However, two (2) exceptions to the general rule are material here.  First, a court may consider "documents attached to the complaint or incorporated by reference therein." *Id.*; *Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224, 231 (1st Cir. 2013).  This exception is sufficiently broad to capture documents "integral to or explicitly relied upon in the complaint, even though not attached to the complaint." *Id.*; *Clorox Co. P.R. v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 32 (1st Cir. 2000). Second, a court may consider "matters of public record." *Fortune* at 34; *Freeman v. Town of Hudson*, 714 F.3d 29, 36 (1st Cir. 2013); *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011). The First Circuit has observed that the phrase "official public records" appears "limited, or nearly so, to documents or facts subject to judicial notice under Federal Rule of Evidence 201." *Freeman*, 714 F.3d at 36.

33.     Defendant RTR asks this Court to take judicial notice of filings in the 2023 Action that are public documents, either filed with the Court or recorded with the

Registry.  Fed.R.Evid. 201(b).

## Doctrine of *Res Judicata* Bars the Plaintiff's Claims

34.     The doctrine of *res judicata* bars the Plaintiff's claims against Defendant

RTR and, therefore, this Court should dismiss the above-captioned action as to

Defendant RTR.  The rule is that, for the doctrine of *res judicata* to apply in Maine, "the

court must satisfy itself that (1) the same parties, or their privies, are involved; (2) a

valid final judgment was entered in the prior action; and (3) the matters presented for

decision were, or **might have been** litigated in the prior action."  *Crane v. Commissioner*

*of Dept. of Agriculture, Food and Rural Resources*, 602 F. Supp. 280, 285 (D. Me. 1985)

(emphasis added) (quoting *Kradoska v. Kipp*, 397 A.2d 562, 565 (Me. 1979)). The *res*

*judicata* standard "boils down to whether the causes of action arise out of a common

nucleus of operative facts." *Mass. Sch. of Law at Andover, Inc. v. Am. Bar. Ass'n*, 142 F.3d

26, 38 (1st Cir. 1998).  In the instant case, all three (3) *res judicata* factors are present.

First, all of the parties to the instant case were parties named in the 2023 Action,[3] to wit:

| PARTIES TO PRIOR DISTRICT COURT ACTION | PARTIES TO CURRENT DISTRICT COURT ACTION |
|---|---|
| Deutsche Bank National Trust Company as Trustee for Soundview Home Loan Trust 2007-1 Asset-Backed Certificates Series 2007-1 | Deutsche Bank National Trust Company as Trustee for Soundview Home Loan Trust 2007-1 Asset-Backed Certificates Series 2007-1 |
| Jeffrey Harder | Jeffrey Harder |

---

[3]  Defendant RTR notes for the Court that, in the answer that the Plaintiff filed in the 2023 Action, Plaintiff did not contest and, in fact, agreed to the averments of plaintiff United States of America, including that Mortgage Lenders Network USA, Inc. was a party defendant to the 2023 Action because it may have a lien or claim an interest in the Property.  Prior Action Complaint, ¶ 4. [ECF No. 1].  Defendant RTR filed a Motion to Substitute and an Answer to the Prior Action Complaint which included a copy of the Plaintiff's promissory note as well as a copy of the Lost Assignment Affidavit, without objection.

| | |
|---|---|
| Maine Revenue Services | "State of Maine" |
| Mortgage Electronic Registration Systems, Inc. | |
| Mortgage Lenders Network USA, Inc. | |
| Quang Nguyen | Quang Nguyen |
| Real Time Resolutions, Inc. | Real Time Resolutions, Inc. |
| Christopher Shelton | Christopher Shelton |
| Joanna Shelton | |
| William Swartzbaugh | William Swartzbaugh |
| Town of Yarmouth Department of Finance | "Town of Yarmouth" |
| United States of America | United States of America |
| | |

Second, the Court in the 2023 Action entered a valid final judgment; on May 8, 2024, the Court granted then-plaintiff United States of America judgment on the pleadings.  Judgment [ECF No. 92]. Third, the issues that the Plaintiff raises in the instant action are issues the Plaintiff could have raised in the 2023 Action.  As of November 16, 2023 in the 2023 Action, when the Court ordered Defendant RTR's substitution of Mortgage Lenders Network USA, Inc. as a party-defendant, the Plaintiff could have cross-claimed to challenge Defendant RTR's claim to the Property and the debt that the Second Mortgage secured.  As of February 28, 2024 in the 2023 Action, when the lienholders filed their Stipulation with the Court, the lienholders noted that the Stipulation did not prohibit the Plaintiff from raising any valid claims or defenses in the 2023 Action.  Stipulation [ECF No. 74].  However, instead of challenging Defendant RTR's claim to the Property and the debt that the Second Mortgage secured, the Plaintiff did the following:

- on May 8, 2024, allowed the Court to enter Judgment in the 2023 Action [ECF

No. 02];

- on July 2, 2024, filed a Chapter 13 petition with the Bankruptcy Court [BECF No. 1];

- on September 10, 2024, voluntarily dismissed his Chapter 13 bankruptcy case [BECF No.47];

- on October 1, 2024, entered into the Post-Judgment Stipulation wherein the Plaintiff waived his right to challenge the May 8, 2024 final judgment, either by motion for reconsideration or by appeal [ECF No. 102]; and

- on June 30, 2025, sold the Property.

The Plaintiff waited until May 12, 2025 – more than one (1) year after the Court entered final judgment in the 2023 Action – to file the above-captioned action, challenging the right of Defendant RTR to the Property and the right to a stipulated payment secured by the Second Mortgage. See Complaint.  In short, the doctrine of *res judicata* bars the Plaintiff's claims in this action because the Plaintiff had the opportunity as well as the incentive to litigate Defendant RTR's ability to collect the amounts stipulated in the 2023 Action; instead, the Plaintiff chose to wait more than a year after final judgment entered before alleging claims against Defendant RTR, claims regarding the Property that the Plaintiff sold seven (7) weeks after filing the above-captioned action in accordance with the terms set forth in the Post-Judgment Stipulation.  *See Macomber v. MacQuinn-Tweedie*, 2003 ME 121, ¶ 22, 834 A.2d 131 (stating that issue preclusion "asks whether a party had a fair opportunity and incentive in an earlier proceeding to present the same issue or issues it wishes to litigate again in a subsequent proceeding"); *20*

*Thames St. LLC v. Ocean State Job Lot of Me. 2017 LLC*, 2021 ME 33, ¶ 15, 252 A.3d 516 (providing that claim preclusion applies when a litigant "had a reasonable opportunity to argue in the prior action" (quotation marks omitted)).  For these reasons, the doctrine of *res judicata* applies to the Plaintiff's claims and, therefore, this Court should dismiss the Plaintiff's claims against Defendant RTR.

### Analysis of Individual Counts

35.    Even if this Court does not dismiss the Plaintiff's complaint pursuant to the doctrine of *res judicata*, this Court should dismiss the individual claims against Defendant RTR as, viewing the alleged facts in the light most favorable to the Plaintiff, the Complaint fails to set forth elements of a cause of action or allege facts that would entitle the Plaintiff to relief under some legal theory.  *Keegan v. Estate of Bradbury*, 2025 ME 13, ¶ 6, 331 A.3d 394 (citations omitted).  The court is "not bound to accept legal conclusions stated in a complaint.  *Id*.; citing *Pacheco v. Libby O'Brien Kingley & Champion, LLC*, 2022 ME 63, ¶ 6, 288 A.3d 398.

### Count I: Declaratory Judgment

36.    This Court should dismiss Count I of the above-captioned action against Defendant RTR because there is no actual controversy.  The rule is that the Declaratory Judgment Act permits, but does not require, courts to "[i]n a case of actual controversy within its jurisdiction ... declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." *28 U.S.C. §2201*.  An "actual controversy" in this context "involves a substantial controversy of sufficient immediacy between parties holding adverse legal interests." *Dworman v*

*PHH Mortg. Servs*., 775 F.Supp.3d 546, 565 (D. Mass. March 31, 2025); citing *Hickman v. Pruco Life Ins. Co.*, No. 23-CV-11676-AK, 2024 U.S. Dist. LEXIS 89216, at *18 (D. Mass. May 17, 2024). To establish justiciability for a declaratory judgment, a party must assert "a claim of right, buttressed by a sufficiently substantial interest to warrant judicial intervention." *Passamaquoddy Water Distr. v. City of Eastport*, 1998 ME 94, ¶ 8, 710 A.2d 897. A genuine controversy exists if "a case is ripe for judicial consideration and action because it satisfies two prongs: (1) the issues raised are fit for judicial review and (2) hardship to the parties will result if the court withholds review." *Utsch v. Dep't of Env't Prot.*, 2024 ME 10, ¶ 24, 314 A.3d 125, citing *Blanchard v. Town of Bar Harbor*, 2019 ME 168, ¶ 20, 221 A.3d 554. In such cases, "federal courts retain substantial discretion in deciding whether to grant declaratory relief. *Id.*, *Ernst & Young v. Depositors Econ. Prot. Corp.*, 45 F.3d 530, 534 (1st Cir. 1995). In the instant case, there is no genuine controversy because the Plaintiff has no claim to the funds at issue. The Court holds the funds from the sale of the Property pursuant to multiple stipulations entered in both the 2023 Action as well as the above-captioned action. Stipulation Order dated March 8, 2024 [ECF No. 80]; and Stipulated Order to Authorize Deposit Into Court Registry dated June 20, 2025 [ECF No. 115]. Those stipulations make clear that the Court should distribute the $985,000.00 received from the sale of the Property as follows:

| LIENHOLDER | AMOUNT OWED TO LIENHOLDER | AGGREGATE TOTAL OWED |
|---|---|---|
| U.S.A. | $648,327.28 | $648,327.28 |
| Deutsche Bank | $206,963.84 | $855,291.12 |
| William Swartzbaugh, Jeffrey Harder, Quang Nguyen | $16,666.10 | $871,957.22 |

| Maine Revenue Services | $111,330.16 | $983,287.38 |
| RTR | $115,000.00 | $1,098,287.38 |

CITE. Aside from the claim of Defendant RTR to the Property sale proceeds, the Plaintiff owes the lienholders an aggregate amount that exceeds the funds remaining. Therefore, there is no actual controversy for this Court to decide because – regardless of whether or not the Plaintiff could successfully challenge Defendant RTR's claim to the Property sale proceeds – that challenge would not result in a distribution of funds to the Plaintiff but, rather, a redistribution of funds among the Plaintiff's other lienholders. Because there is no actual controversy between the Plaintiff and Defendant RTR, this Court should dismiss Count I of the above-captioned action.

### Count II: Truth-in-Lending Act

37.    This Court should dismiss Count II of the above-captioned action because the Plaintiff's allegations, accepted as true, do not constitute a violation of the Truth-in-Lending Act ("**TILA**") for the time period of March 8, 2024 forward. The rule is that a claim is facially plausible when a plaintiff pleads facts that would allow "the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). "The Court must accept as true all well-pleaded factual allegations in the complaint, and 'draw [ ] all inferences in the plaintiff's favor.'" *Goonan v. Fed. Rsrv. Bank of N.Y.*, 916 F. Supp. 2d 470, 478 (S.D.N.Y. 2013) (alteration in original) (quoting *Allaire Corp. v. Okumus*, 433 F.3d 248, 249-50 (2d Cir. 2006)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. In the instant case, on February 28, 2024 Defendant RTR agreed to accept the sum of $115,000.00[4] in satisfaction of its claim under the Second Mortgage on the Property. On March 8, 2024, the Court entered that stipulation as an order in the 2023 Action. Stipulation Order dated March 8, 2024 [ECF No. 80]. Meanwhile, in the instant case, the Plaintiff alleges the following:

- "A servicer is exempt from sending periodic statements for charged-off accounts … if the servicer will not charge any additional fees or interest on the account."

- "Upon information and belief, Plaintiff's second mortgage loan was charged off by a prior owner, and RTR acquired the loan after charge-off"; and

- "Defendant RTR has failed to provide the Plaintiff with the required periodic statements for a period of approximately 10 years."

Complaint, ¶¶ 31-33 and 77-79. Taking the Plaintiff's allegations as true, the Plaintiff fails to allege a violation of TILA because – as the Plaintiff admits in his Complaint – a "servicer is exempt from sending periodic statements for charged-off accounts … if the servicer will not charge any additional fees or interest on the account." Complaint, ¶ 77; *12 C.F.R. § 1026.41(e)(6)*. On March 8, 2024, the Court in the 2023 Action approved Defendant RTR's agreement to fix its claim under the Second Mortgage on the Property at $115,000.00; therefore, since at least March 8, 2024, RTR has not charged any

---

[4] The Stipulation provided for RTR to accept $110,000.00 if the Property was sold prior to October 10, 2024. Once that date passed without a sale, the Lienholders agreed RTR would receive $115,000.00. Stipulation Order dated March 8, 2024 [ECF No. 80].

additional fees or interest on the Plaintiff's Second Mortgage.  For this reason, this Court should dismiss Count II of the above-captioned action for failure to state a claim upon which relief can be granted.

38.     This Court should dismiss Count II of the above-captioned action for failure to state a claim upon which relief can be granted because, for any alleged violation pre-dating March 8, 2024, such a violation would be barred by the applicable statute of limitations.  The rule is that a party filing a TILA claim must file the action within "one year from the date of the occurrence of the violation." *15 U.S.C. § 1640(e)*. District Courts in the First Circuit measure the start of TILA's statute of limitations "from the point at which a consumer would reasonably have been put 'on notice that a violation had occurred.'" *Schwartz v. HSBC Bank USA, N.A.*, 160 F. Supp. 3d 666, 680 (S.D.N.Y. 2016) (quoting *Baskin v. G. Fox & Co.*, 550 F. Supp. 64, 67 (D. Conn. 1982)).  In the instant case, the Plaintiff filed his Complaint on May 12, 2025.  Doc No. 1. In the Complaint, the Plaintiff makes the threadbare allegation that Defendant RTR "failed to provide Plaintiff with the required periodic statements for a period of approximately 10 years" without identifying the purported 10-year period.  Complaint, ¶ 79.  As indicated *supra*, on March 8, 2024 Defendant RTR fixed its claim pursuant to the Second Mortgage on the Property when it agreed to accept $115,000.00 in satisfaction of the Second Mortgage and related promissory note.  *ECF No. 80* ("Order on Stipulation Regarding Priority of Lienholder Parties").  Consequently, as of March 8, 2024 the Plaintiff knew or should have known that Defendant RTR claimed the right to enforce the Second Mortgage.  *Id.*  To the extent that the Plaintiff alleges that Defendant

RTR violated TILA by conduct prior to March 8, 2024, the one-year statute of limitations bars those alleged claims.  To the extent the TILA claims related to conduct after March 8, 2024, RTR was under no obligation to send periodic statements during the pendency of the Shelton Bankruptcy from July 2, 2024 through November 19, 2024.  12 C.F.R. § 1026.41(e)(5). Therefore, this Court should dismiss Count II of the above-captioned action for failure to state a claim upon which relief can be granted.

### III.    Fair Debt Collection Practices Act

39.    This Court should dismiss Count III of the above-captioned action as the Plaintiff fails to allege any facts that would establish that Defendant RTR commenced a collection action against the Plaintiff in violation of the Fair Debt Collection Practices Act ("**FDCPA**").  The FDCPA was enacted to protect debtors from abusive debt collection practices.  *Kowalski v. Seterus, Inc.*, 2017 U.S. Dist. LEXIS 2594, ¶ 24, quoting *Chiang v, Verizon New England, Inc.*, 595 F. 3d.  26, 41 (1st Cir. 2010).  The rule is that, to prevail on an FDCPA claim, "a plaintiff must prove that (1) he was the object of collection activity arising from a consumer debt, (2) the defendant is a debt collector within the meaning of the statute and (3) the defendant engaged in a prohibited act or omission under the FDCPA."  *Kowalksi* at ¶ 25; quoting *Poulin v. The Thomas Agency*, 780 F.Supp. 2d 151, 158 (D.Me. 2011).  In the instant case, nowhere in his Complaint does the Plaintiff allege that Defendant RTR instituted a collection action against him. <u>Complaint</u>.  In fact, as the record makes clear, the scope of Defendant RTR's actions vis-à-vis the Plaintiff include (a) substituting itself for Mortgage Networks Lenders, Inc. in the 2023 Action, (b) filing a proof of claim the Plaintiff's 2024 bankruptcy case, and (c)

filing pleadings in the above-captioned action. Motion to Substitute Party dated November 3, 2023 [ECF No. 49]; and Real Time Resolutions, Inc.'s Proof of Claim dated September 10, 2024 [Claim 15-1].Therefore, because the Plaintiff fails to allege any facts that would establish that Defendant RTR commenced a collection action against the Plaintiff, this Court should dismiss Count III of the above-captioned action.

**Count IV: Mortgage Servicer's Duty of Good Faith**

40.     This Court should dismiss Count IV of the above-captioned action because the Plaintiff fails to allege any actual damages resulting from the purported breach of the duty of good faith. The rule is that a "homeowner or obligor injured by a violation of the duty of good faith may bring an action against the mortgage servicer for all actual damages sustained by the homeowner or obligor." *14 M.R.S. § 6113(4)(A).* An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not conjectural or hypothetical.'" *Ross v. New Residential Mortg., LLC*, 2024 U.S.Dist. LEXIS 86449, *9' citing *Kerin v. Titeflex Corp.*, 770 F.3d 978, 981 (1st Cir. 2014) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)). An injury is "particularized" if it "affect[s] the plaintiff in a personal and individual way." *Spokeo v. Robins*, 578 U.S. 330,  339, 136 S. Ct. 1540 (quoting *Lujan*, 504 U.S. at 560 n.1). To be concrete, an injury "must actually exist." *Id.* at 340. An allegation of "a bare procedural violation" of the law is insufficient. *Id.* at 342. A plaintiff cannot "automatically satisfy the injury-in-fact requirement by suing under a statute granting a person a statutory right and purporting to authorize that person to sue to vindicate that right." *Ross* at *10, quoting *Spokeo,* at 342. In the instant case, the

Plaintiff makes the bare allegations that Defendant RTR's purported breach of the duty of good faith caused him the following damages:

      a.  Loss of the opportunity to save his home through bankruptcy;

      b.  Increased costs and fees associated with the forced stipulation and pending sale of the Property;

      c.  Emotional distress and mental anguish; and

      d.  Attorney's fees and costs incurred to address RTR's improper servicing activities.

<u>Complaint</u>, ¶ 109.  However, the Plaintiff's allegations in support of his claim for damages mischaracterize the underlying facts.  For example, Defendant RTR did not deprive the Plaintiff of the opportunity to "save his home through bankruptcy;" in fact, the Plaintiff and Joanna Shelton – faced with four (4) separate objections to their proposed Chapter 13 plan – voluntarily dismissed their bankruptcy case.  Debtor's Motion to Dismiss dated September 10, 2024 [BECF No. 46].  For example, the Plaintiff does not allege that Defendant RTR took any action that "forced" the Plaintiff either to enter into stipulations or to sell the Property; in fact, in both instances the United States of America – seeking to reduce to judgment the Plaintiff's tax obligations and then enforce said judgment – prosecuted the legal action that compelled the Plaintiff to allow the United States of America to obtain judgment on the pleadings in the 2023 Action.  Judgment [ECF No. 92],.  For example, the Plaintiff generally alleges "[e]motional distress and mental anguish" with no specific supporting facts and with no allegation of physical injury.  <u>Complaint</u>, ¶¶ 61, 109(c); *Perry v. Neth. Ins. Co.*, 2016 Me.  Bus. &

Consumer LEXIS 22, *24-25.  The Plaintiff also failed to offer the Court any argument that Defendant RTR engaged in a "pattern or practice" that would support an award of statutory damages and attorney's fees.  Complaint, ¶¶ 61, 109(c).  Therefore, because the Plaintiff fails to allege any actual damages resulting from the purported breach of the duty of good faith, this Court should dismiss Count IV of the above-captioned action

**Count V: Slander of Title**

41.    This Court should dismiss Count V of the above-captioned action for failure to state a claim upon which relief can be granted.  The rule is that "[i]In order to recover for slander of title, a plaintiff must prove four elements: (1) publication of a slanderous statement disparaging a claimant's title to an interest in land, (2) the statement was false, (3) the statement was made with malice or with reckless disregard of its falsity, and (4) the statement caused actual damage." *Caterino v. Bergendahl*, 2025 Me. Super. LEXIS 59, *10; *Kinderhaus N. LLC v. Nicolas*, 2024 ME 34, ¶ 55, 314 A.3d 300 (quoting *Pettee v. Young*, 2001 ME 156, ¶ 20, 783 A.2d 637).  In the instant case, even if the Plaintiff's allegations were true, the Plaintiff agreed to sell the Property no later than June 30, 2025 and Defendant RTR agreed to discharge its Second Mortgage.  Post-Judgment Stipulation [ECF No. 102]. Further, the Plaintiff agreed not to challenge or appeal the Court's final judgment in the 2023 Action granting the United States of America judgment on the pleadings.  Id.  The Plaintiff does not allege that Defendant RTR's claim to the Second Mortgage on the Property impacted the Plaintiff's ability to sell the Property and, in fact, the Plaintiff chose not to challenge Defendant RTR's claim

to the Second Mortgage on the Property in the 2023 Action.[5]   For these reasons, this Court should dismiss Count V of the above-captioned action for failure to state a claim upon which relief can be granted.

## VI.    CONCLUSION

For all these reasons, this Court should dismiss the Plaintiff's Complaint.   The Plaintiff could have -- and should have -- raised any alleged statutory violations as part of the 2023 Action, which was related to the Property, resulted in the sale of the Property, and was fully adjudicated by a judgment on the pleadings in favor of the United States of America.   The first Stipulation and Order, which established an agreed-upon payment by the United States of America to the various lienholders, including Defendant RTR, once the Property sold, was then followed by a second Stipulation and Order which prevents the Plaintiff from appealing the judgment in the 2023 Action, provided the basis for the sale of the Property.

Furthermore, no controversy exists between the parties.   The Property has been sold and the remaining funds are to be distributed to RTR.   Even if the Plaintiff was successful under one of his various alleged causes of action, those funds would not be distributed to him.   The United States of America or Maine Revenue have already stipulated that Defendant RTR's lien has priority to the negotiated amount of

---

[5]  The Plaintiff does not allege that he incurred any expense related to removing the purported cloud on the title of the Property.  The prevailing party in a slander of title action may recover as special damages those attorney fees and expenses incurred to remove the cloud on the title but not "those incurred to prosecute the slander of title action." *Caterino at *13.*  Instead, Defendant RTR discharged its Second Mortgage on the Property when the Plaintiff sold the Property to a third party in accordance with the judgment of the 2023 Action.  Any costs were paid in accordance with the Stipulation and Order.

$115,000.00. The Plaintiff, waiting until the Property was about to be sold to bring this action, is time-barred from alleging a TILA violation and cannot establish any collection activity on the part of Defendant RTR to support an FDCPA violation.

Finally, the Plaintiff fails to assert any alleged facts that would support his stated causes of action. There is no injury caused by Defendant RTR. The Plaintiff has asserted that Defendant RTR, instead of the United States of America, caused him "harm" in the 2023 Action. However, by the Plaintiff's own deeds and agreements, the 2023 Action was resolved by a Stipulation and Order signed by the United States of America, the Plaintiff and Joanna Shelton and all of the other lienholder defendants. No action on the part of Defendant RTR caused injury to the Plaintiff. The Property was sold pursuant to a valid court order in the 2023 Action, and neither the Plaintiff, nor Defendant RTR have any remaining interest in the Property. Defendant RTR asks that this Court dismiss this action and that the Stipulation and Order in the 2023 Action related to distribution of the proceeds from the sale be enforced.

WHEREFORE, Real Time Resolutions, Inc. respectfully moves this Court to enter an Order:

a. Dismissing Count I of the Plaintiff's complaint with prejudice;

b. Dismissing Count II of the Plaintiff's complaint with prejudice;

c. Dismissing Count III of the Plaintiff's complaint with prejudice;

d. Dismissing Count IV of the Plaintiff's complaint with prejudice;

e. Dismissing Count V of the Plaintiff's complaint with prejudice;

f. Dismissing Defendant RTR from the above-captioned action; and

g.  Granting Defendant RTR such other and further relief as is just and proper.


REAL TIME RESOLUTIONS, INC.

By its attorneys,

__/s/ Joan M. Egdall_____
Joan M. Egdall, Esq., Bar No. 9490
Demerle & Associates, P.C.
10 City Square
Boston, MA 02129
617-934-7431
jegdall@demerlepc.com

Dated:  September 2, 2025

**NOTICE**

Please be advised that pursuant to the United States District Court for the District of Maine Rules of Civil Procedure 7(b) any opposition to this Motion must be filed not later than 21 days after the filing of this Motion.  Failure to file a timely opposition shall be deemed a waiver of all objections to the Motion, which may be granted without further notice or hearing.

**<u>CERTIFICATION OF SERVICE</u>**

I, Joan M. Egdall, Esq., of the law firm of Demerle & Associates P.C., hereby certify that I have this 2nd day of September, 2025 served on behalf of Real Time Resolutions, Inc., a <u>Motion to Dismiss with supporting Memorandum of Law and proposed Judgment</u> to the Court's CM/ECF system, which automatically sends notification to all counsel of record.

*<u>/s/ Joan M. Egdall</u>*
Joan M. Egdall, Esq.