UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| CHRISTOPHER A. SHELTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:25-cv-00236-SDN |
| | ) | |
| REAL TIME RESOLUTIONS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

### Address: 314 Cousins Street, Yarmouth, ME 04096

This matter comes before the Court on a motion to dismiss by Defendant Real Time Resolutions, Inc. ("RTR"). ECF No. 18. For the reasons that follow, Defendant's motion is **GRANTED IN PART** and **DENIED IN PART**.

### BACKGROUND

Plaintiff Christopher A. Shelton is a resident of Maine, and RTR is a corporation with a principal place of business in Dallas, Texas. ECF No. 1 at ¶¶ 9–10. On May 12, 2025, Mr. Shelton brought suit against RTR, alleging RTR is impermissibly seeking to collect on a mortgage note for real property located at 314 Cousins Street, Yarmouth, ME 04096 ("the Property") to which it does not have any enforceable rights. *See id.* at ¶ 1. Because Defendant moves to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court "take[s] the well-pleaded facts as they appear in the complaint, extending the plaintiff every reasonable inference in his favor." *Pihl v. Mass. Dep't of Educ.*, 9 F.3d 184, 187 (1st Cir. 1993).

1

In his Complaint, Mr. Shelton alleges the following. On or around December 8, 2006, Plaintiff borrowed $73,600 from Mortgage Lenders Network USA, Inc. ("MLN") pursuant to a promissory note ("the Note"). ECF No. 1 at ¶ 20. To secure the Note, Plaintiff granted a mortgage on the Property ("the Mortgage") to Mortgage Electronic Registration Systems, Inc. ("MERS") as a nominee for MLN. *Id*. at ¶ 21. The Mortgage was subsequently recorded in the Cumberland County Registry of Deeds, book 24660, page 205. *Id*. at ¶ 22. In 2007, MLN filed for bankruptcy, and the loan made to Plaintiff was sold. *Id*. at ¶¶ 24–25. Mr. Shelton alleges the Mortgage was not properly assigned to a successor in interest. *Id*. at ¶ 26. Mr. Shelton believes the Mortgage was charged off (i.e., the lender moved the debt from its active assets to the loss column) at some unspecified point in time, either by a previous owner or servicer of the loan, or by Defendant RTR. *Id*. at ¶ 31.

On or about November 8, 2023, Defendant RTR filed an "Affidavit Regarding Lost or Misplaced Assignment" in the Cumberland County Registry of Deeds in book 40468, page 131 ("the Affidavit of Lost Assignment"), which purports to establish that RTR has a secured interest in the Note and Mortgage. *Id*. at ¶¶ 46–47. Mr. Shelton contends the Affidavit of Lost Assignment does not comply with relevant Maine state law, which requires an attachment of the original deed and support within ninety days by depositions establishing the instrument was lost. *Id*. at ¶ 48; *see* 33 M.R.S. § 204. On September 9, 2024, MERS, as a nominee for RTR, assigned its interests in the Mortgage to RTR in an assignment at book 40982, page 186, of the Cumberland County Registry of Deeds. ECF No. 1 at ¶ 49.

On April 18, 2023, the United States filed suit against Mr. Shelton and his wife ("the 2023 Action"), seeking to collect significant unpaid federal tax liabilities. *Id*. at ¶ 56;

*see United States v. Shelton, et al.*, No. 23-cv-00173 (D. Me. 2023).[1] RTR was a defendant in the suit[2] and was ultimately determined to be the fourth party-in-interest for the outstanding Mortgage balance of $115,000.00.[3] *See* ECF No. 18-2 at 3.

In July 2024, following the filing of the 2023 Action, Mr. Shelton and his wife filed a Chapter 13 bankruptcy petition in the United States Bankruptcy Court in the District of Maine. ECF No. 1 at ¶ 51; *see In re Shelton*, No. 24-20136 (Bankr. D. Me. 2024). RTR filed proof of claim in the bankruptcy action. *See* ECF No. 1 at ¶ 53. RTR filed an objection to confirmation of the bankruptcy plan, claiming to be the holder of the Note and Mortgage on the Property and seeking $180,015.68. *Id.* at ¶ 52. Mr. Shelton subsequently dismissed the bankruptcy action and entered into a stipulation in the 2023 Action with the United States and the other lienholders to sell the Property by June 30, 2025, with the proceeds being used to satisfy various liens on the Property, including RTR's mortgage. *Id.* at ¶ 59; *see* ECF No. 18-2 ("the Stipulation"). Under the Stipulation, Mr. Shelton owes $1,025.00 a month to RTR. *See id.* at 4; ECF No. 1 at ¶ 60.

In May 2025, Mr. Shelton brought the instant suit against RTR, asserting five causes of action. First, he seeks a declaratory judgment that RTR does not have an enforceable right to collect the debt or enforce any security interest in the Property. *Id.* at

---

[1] Generally on a motion to dismiss, the Court is constrained to considering only "documents attached to the complaint or incorporated by reference therein." *Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224, 231 (1st Cir. 2013). However, when "a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss." *Beddall v. State St. Bank & Tr. Co.*, 137 F.3d 12, 17 (1st Cir. 1998). The Court therefore considers the Stipulation Regarding Priority of Lienholder Parties ("the Stipulation"), the order adopting the Stipulation, and the post-judgment stipulation from the 2023 Action, which are referenced in and integral to the Complaint in this case. *See* ECF Nos. 18-1, 18-2, 18-4.

[2] MLN was initially named as a defendant; RTR filed a motion to substitute itself as the party in interest, which the court granted. *See* ECF No. 18 at ¶¶ 9–10.

[3] The original balance owed to RTR was $110,000.00. ECF No. 18-1 at 6. In the event the Property sold after October 15, 2024, which it did, the amount owed increased to $115,000.00. *Id.*

3

10–11. Second, he alleges violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.*, and its implementing regulation, Regulation Z, 12 C.F.R. § 1026, for failing to provide Plaintiff with required periodic balance statements for ten years, despite RTR accruing interest and late fees on the outstanding balance. ECF No. 1 at 11–12. Third, he asserts violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, by RTR acting as a debt collector and falsely representing the character, amount, and legal status of the debt. ECF No. 1 at 12–14. Fourth, he asserts violations of the mortgage servicer's duty of good faith under 14 M.R.S. § 6113 when RTR, among other things, falsely claimed to be the holder of the Mortgage, recorded insufficient documents with the Registry of Deeds, and opposed Plaintiff's bankruptcy claim without a good-faith basis to assert a secured claim in the Property. ECF No. 1 at 14–16. Finally, Plaintiff brings one count of slander of title for publishing false statements with the Registry of Deeds. *Id*. at 16–17.

## ANALYSIS

In evaluating a motion to dismiss under Rule 12(b)(6), the Court engages in a two-step analysis. *See Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012). First, the Court must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." *Id*. Second, taking the well-pleaded factual content as true and drawing all reasonable inferences in the plaintiff's favor, the Court must determine whether the complaint plausibly narrates a claim for relief. *See Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) (discussing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).

## I.  Res Judicata

As a threshold matter, the Court must address Defendant's argument that Plaintiff's claims against RTR are barred by the doctrine of res judicata. ECF No. 18 at 11–14. An affirmative defense such as res judicata may be raised in the first instance in a motion to dismiss "when the facts establishing the defense are clear on the face of the plaintiff's pleadings." *Medina-Padilla v. U.S. Aviation Underwriters, Inc.*, 815 F.3d 83, 85 (1st Cir. 2016); *see* Fed R. Civ. P. 8(c)(1). When a federal court exercises federal question jurisdiction, as it does here, the applicability of res judicata is a question of federal law. *Maher v. GSI Lumonics, Inc.*, 433 F.3d 123, 126 (1st Cir. 2005); *see also Apparel Art Int'l, Inc. v. Amertex Enters. Ltd.*, 48 F.3d 576, 582 (1st Cir. 1995) ("Federal law principles of res judicata govern the preclusive effect of a prior federal court's judgment on a subsequent action brought in federal court.").

"Under the federal law of res judicata, a final judgment on the merits of an action precludes the parties from relitigating claims that were raised or could have been raised in that action." *Porn v. Nat'l Grange Mut. Ins. Co.*, 93 F.3d 31, 34 (1st Cir. 1996). RTR asserts the judgment in the 2023 Action precludes Mr. Shelton's current claims because Mr. Shelton had the opportunity to contest RTR's claim to the Property in the original action but chose not to. ECF No. 18 at 11–13. In response, Mr. Shelton cites to the Stipulation, which included the following language: "The Sheltons have not responded to an inquiry as to whether they will object [to the stipulation] and, in any event, this stipulation is not intended to preclude any claims or defenses they may be otherwise entitled to raise." ECF No. 18-1 at 1. He also points to the post-judgment stipulation, wherein the parties, including RTR, stated "the Sheltons may still challenge RTR's interest in the Property." ECF No. 18-4 at 4 n.1.

Collateral estoppel, the form of res judicata which RTR argues bars adjudication of this claim, applies "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment." Restatement (2d) of Judgments § 27 (1982). However, the First Circuit acknowledges there are "many reasons a party may choose not to raise an issue," so courts should generally "err on the side of *not* finding an issue precluded when it is not clear that it was fully litigated." *De Prins v. Michaeles Tr. of Donald Belanger Irrevocable Tr. Dated Oct. 28, 2008*, 942 F.3d 521, 525 (1st Cir. 2019) (emphasis in original). For that reason, stipulations and consent judgments are not usually given preclusive effect. *See id.* Here, the two statements in the Stipulation and the post-judgment stipulation indicate the parties have *not* manifested an intention for RTR's interest in the Property to be deemed conclusively litigated. If the parties had intended the Stipulation to be binding as to RTR's interest, the Court expects they would have spoken clearly to that effect, rather than to say the opposite. *See* Restatement (2d) of Judgments § 27, cmt. e ("The judgment may be conclusive, however, with respect to one or more issues, if the parties have entered an agreement manifesting such an intention."). Therefore, Mr. Shelton's claims in the case at hand are not barred by the doctrine of res judicata.

## II. Declaratory Judgment (Count I)

Mr. Shelton seeks a declaration that RTR does not have an enforceable right to any security interest in the Property because (1) MERS's assignment of the Note to RTR was improper, and (2) the Affidavit of Lost Assignment does not comply with Maine state law regarding lost instruments for real property. ECF No. 1 at 10–11. RTR seeks dismissal of this count for lack of an actual controversy, arguing that Plaintiff has no claim to the funds at issue (the $115,000.00 on the outstanding Mortgage) because the Court holds the funds

6

from the sale of the Property pursuant to the Stipulation Order. ECF No. 18 at 15. Therefore, RTR argues, Mr. Shelton could not successfully challenge RTR's claim to the funds because even a successful result of that challenge would require redistribution of the proceeds to the other lienholders, rather than a return of the money to Mr. Shelton. *Id.* at 16.

The Declaratory Judgment Act, under which Mr. Shelton brought suit, limits a court's ability to grant declaratory relief to cases of "actual controversy" under Article III. *See* 28 U.S.C. § 2201(a). To determine whether an actual controversy exists, the Court examines "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 919 F.3d 638, 645 (1st Cir. 2019) (emphasis omitted) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). The linchpin of the analysis is the nature of the relief requested: the controversy must admit to "'specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *State of R.I. v. Narragansett Indian Tribe*, 19 F.3d 685, 693 (1st Cir. 1994) (quoting *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 241 (1937)). Generally, courts grant declaratory judgment when it (1) clarifies and settles the legal relations at issue and (2) terminates the "uncertainty, insecurity, and controversy" giving rise to the proceeding. *Pena Real Est. Invs., LLC v. One Hardt, LLC*, No. 22-cv-11544, 2023 WL 3997038, at *10 (D. Mass. June 14, 2023) (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937)).

The Court disagrees with RTR's contention that determining its interest in the Property is irrelevant to the Plaintiff simply because a Stipulation for the sale of the Property and its proceeds already exists. *See* ECF No. 18 at 15. As RTR's own briefing indicates, Mr. Shelton owes significant sums of money to other lienholders, including the United States government. *See id*. at 15–16. A declaratory judgment would serve the "useful purpose" of clarifying RTR's actual interest in the Property such that the priority of lienholders could be more readily ascertained and reorganized as necessary. *Pena Real Est.*, 2023 WL 3997038, at *10 (quoting *Aetna Cas.*, 92 F.2d at 325). As the Stipulation and post-judgment stipulation indicate, the parties in the 2023 Action acknowledged that Mr. Shelton might want to further challenge RTR's interest in the Property, demonstrating the "uncertainty, insecurity, and controversy" giving rise to these proceedings. *Id*. Determining whether MERS validly assigned the Mortgage to RTR and whether RTR's Affidavit were proper provides "practical assistance in setting the underlying controversy to rest." *Narragansett*, 19 F.3d at 693. Therefore, RTR's motion to dismiss Count I is **DENIED**.

### III. Truth in Lending Act (Count II)

RTR moves to dismiss Mr. Shelton's TILA claims (Count II) for two separate reasons. The Court will address each in turn.

#### A. Substantive Truth in Lending Act Claim

Mr. Shelton alleges RTR violated the TILA by failing to provide him with periodic statements of the amount due on the Mortgage for approximately ten years. ECF No. 1 at 11–12. Pursuant to 15 U.S.C. § 1638(f), mortgage servicers—such as RTR—must provide periodic billing statements to the obligor. While a servicer may be exempt from this requirement if it has charged off the loan and ceases to charge any additional fees or

interest, *see* 12 C.F.R. § 1026.41(e)(6), Mr. Shelton contends RTR continued to charge interest, late fees, and other fees throughout the period it withheld those billing statements. ECF No. 1 at 12. RTR moves to dismiss the TILA count, arguing that since the date the Court approved the Stipulation in the 2023 Action—March 8, 2024—"RTR has not charged any additional fees or interest" on the Mortgage. ECF No. 18 at 17–18.

The Court's standard for evaluating a motion to dismiss bears repeating. Accepting all well-pleaded facts as true, the Court "giv[es] the party who has pleaded the contested claim the benefit of all reasonable inferences." *Palmer v. Champion Mortg.*, 465 F.3d 24, 27 (1st Cir. 2006). In his Complaint, Mr. Shelton alleges either RTR or the previous lienholder charged off the Mortgage ten years ago. *See* ECF No. 1 at ¶ 31. He further alleges he never received the periodic billing statements he was due, *id.* at ¶ 79, and that RTR continued to charge interest and other fees despite failing to send the required statements, *id.* at ¶ 80.

The Court cannot resolve factual disputes at this stage. Instead, whether dismissal is proper under Rule 12(b)(6) depends upon the Complaint's compliance with Rule 8(a)(2), which "requires sufficient detail in the complaint to give a defendant fair notice of the claim and the grounds upon which it rests." *Ocasio-Hernández*, 640 F.3d at 8; *see* Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). The Court finds Mr. Shelton's Complaint provides RTR with fair notice of the TILA claim because the factual allegations—specifically that RTR continued to accrue fees after the charge-off—are "enough to raise a right to relief above

the speculative level." *Twombly*, 550 U.S. at 555.[4] Accordingly, the Court denies RTR's motion to dismiss Count II on this basis.

## B. Statute of Limitations

RTR also seeks dismissal of Count II under the statute of limitations, asserting a one-year limitation for filing TILA claims. ECF No. 18 at 18–19; *see* 15 U.S.C. § 1640(e) ("[A]ny action under this section may be brought . . . within one year from the date of the occurrence of the violation . . . ."). A defendant may raise a statute of limitations defense in a motion to dismiss only if the facts establishing the defense appear clearly "'on the face of the plaintiff's pleadings.'" *Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 320 (1st Cir. 2008) (quoting *Blackstone Realty LLC v. FDIC*, 244 F.3d 193, 197 (1st Cir. 2001)). Dismissal is appropriate only where the complaint "leave[s] no doubt that an asserted claim is time-barred." *LaChapelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 509 (1st Cir. 1998). To make this determination, the Court examines only the dates included in the complaint to determine whether the limitations period has been exceeded. *See Trans-Spec*, 524 F.3d at 320.

As RTR's own briefing acknowledges, the specific dates for which RTR allegedly failed to provide billing statements remain unclear. *See* ECF No. 18 at 18 (noting Plaintiff did not "identify[] the purported 10-year period."); ECF No. 1 at ¶ 79 (alleging a failure to provide statements for "approximately 10 years."); *id*. at ¶ 33 (alleging RTR failed to send

---

[4] Mr. Shelton's response also directs the Court's attention to the Stipulation, which indicates that RTR holds fourth in priority for the $115,000.00 outstanding Mortgage balance but drops to seventeenth in priority "for the outstanding balance on RTR's claim . . . after crediting the [$115,000.00] amount received." *See* ECF No. 18-2 at 2, 4. According to Mr. Shelton, "[t]aken together, these documents show RTR continued to treat the account as accruing interest and to demand payments after March 8, 2024, which places RTR's conduct squarely within the rule that a servicer that charges additional interest or fees on a charged-off account must send periodic statements." ECF No. 19 at 8. The Court need not consider the implications of the Stipulation's language at this time because the face of the Complaint sufficiently states a claim for relief.

10

statements "for many years, if ever"). Because the Complaint does not establish the exact timeline of the alleged violations, the Court cannot determine at this stage whether the limitations period bars Mr. Shelton's TILA claim.

Accordingly, the Court **DENIES** RTR's motion to dismiss Count II.

### IV. Fair Debt Collection Practices Act (Count III)

Mr. Shelton brings one claim against RTR for violation of the FDCPA. He argues RTR engaged in unfair or deceptive practices by falsely representing the character, amount, and legal status of the Mortgage—specifically by claiming to hold both the debt and a secured interest in the Property when it lacked legal standing to enforce those claims. ECF No. 1 at 12–14. RTR moves to dismiss, contending its challenged conduct does not constitute "collection" activity under 15 U.S.C. § 1692e. ECF No. 18 at 19–20; *see* 15 U.S.C. § 1692e ("A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.").

While RTR does not dispute its status as a debt collector, *see* 15 U.S.C. § 1692a(6), it argues that the three actions it took in relation to the Plaintiff—(1) substituting itself for MERS in the 2023 Action, (2) filing proof of claim Mr. Shelton's bankruptcy, and (3) filing pleadings in the current case—are not "collection activities" within the meaning of the statute. *See id*. at 19–20.

"The FDCPA is a landmark piece of consumer credit legislation designed to eliminate abusive, deceptive, and other unfair debt collection practices." *Arruda v. Sears, Roebuck & Co.*, 310 F.3d 13, 22 (1st Cir. 2002) (citing 15 U.S.C. § 1692). A private cause of action under the FDCPA arises when there are "legal actions against a debtor, . . . for the benefit of a creditor, . . . conducted by persons within the scope of [] the . . . Federal FDCPA." *Hamilton v. Fed. Home Loan Mortg. Corp.*, No. 13-cv-00414, 2014 WL

11

4594733, at *18 (D. Me. Sept. 15, 2014). To assert an FDCPA claim, a plaintiff must plausibly allege "(1) he was the object of collection activity arising from consumer debt, (2) the defendant is a debt collector within the meaning of the statute, and (3) the defendant engaged in a prohibited act or omission under the FDCPA." *Poulin v. The Thomas Agency*, 760 F. Supp. 2d 151, 158 (D. Me. 2011) (quotation modified).

A debt is "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes[.]" 15 U.S.C.A. § 1692a(5). "At a minimum, therefore, a complaint must allege a scenario involving the collection (or attempted collection) of a debt." *Arruda*, 310 F.3d at 23.

Federal courts have consistently held the FDCPA does not apply to the filing of proofs of claim in bankruptcy cases, even if the underlying claim is alleged to be invalid or stale. *See In re Martel*, 539 B.R. 192, 195–96 (Bankr. D. Me. 2015) (noting the Bankruptcy Code provides its own remedies for the filing of invalid claims, which generally displaces the FDCPA in this context); *see also In re Claudio*, 463 B.R. 190, 193 (Bankr. D. Mass. 2012); *Simmons v. Roundup Funding, LLC*, 622 F.3d 93, 95 (2d Cir. 2010) (collecting cases). To the extent Mr. Shelton's claim rests on RTR filing a proof of claim as a secured creditor in the bankruptcy action, *see* ECF No. 1 at ¶¶ 93–94, 99, that portion of his claim fails as a matter of law.[5]

Mr. Shelton next asserts RTR engaged in deceptive practices when it obtained the MERS Assignment and filed the Affidavit of Lost Assignment with the Registry of Deeds. ECF No. 1 at ¶ 95. The statutory provision Mr. Shelton cites, 15 U.S.C. § 1692e(10),

---

[5] For these same reasons, Mr. Shelton's claim that RTR violated 15 U.S.C. § 1692e(5) "by threatening to take an action that cannot legally be taken" by asserting a claim in the bankruptcy proceeding is insufficient to state a claim for relief. *See* ECF No. 1 at ¶ 94.

prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt." The Complaint fails to explain how a defective assignment in a chain of title—administrative acts involving the Registry of Deeds—amounts to an interaction with the consumer for the purpose of collecting a debt. Without more than "labels and conclusions," these activities do not constitute debt collection activity. *See Jones v. Bank of N.Y.*, No. CIV.A. 12-11503, 2013 WL 3728382, at *2 (D. Mass. July 12, 2013) (dismissing an FDCPA claim based on activity related to the chain of title for failure to allege a connection to debt collection). Accordingly, that portion of Mr. Shelton's FDCPA claim also fails as a matter of law.

Mr. Shelton also alleges RTR violated 15 U.S.C. § 1692f(1) and § 1692e(2)(A) by collecting interest and fees while failing to send the periodic billing statements required by the TILA. ECF No. 1 at ¶¶ 97–98. Section 1692f(1) of title 15 prohibits the "collection of any amount" not authorized by agreement or law. The operative term is "collecting," which refers to the affirmative act of seeking or receiving payment. *See Glover v. Ocwen Loan Servicing, LLC*, 127 F.4th 1278, 1287 (11th Cir. 2025) (Section 1692f(1) "most logically prohibits the 'conduct' of collecting 'any amount' not authorized by the debt-creating agreement or permitted by law, while a debt collector is collecting a debt."); *id.* at 1288 ("[D]ebt collectors violate 15 U.S.C. § 1692f(1) when they use a payment processor that collects a convenience fee from a consumer and remits to the debt collector any amount in connection with that fee."); *cf. Alexander v. Carrington Mortg. Servs., LLC*, 23 F.4th 370, 377–78 (4th Cir. 2022) (finding that convenience fees qualify as an "amount" under the FDCPA). Mr. Shelton's grievance with RTR is an *omission*—the failure to send a notice—rather than the *affirmative collection* of an unauthorized fee. While the failure to send a statement might violate the TILA, it does not, without more,

13

constitute an "unfair or unconscionable" collection practice under the FDCPA. 15 U.S.C. § 1692f. The FDCPA is not a vehicle to litigate every technical TILA notice violation unless that violation is coupled with an actual attempt to collect an unauthorized sum. *Cf. Lamirand v. Fay Servicing, LLC*, 38 F.4th 976, 980 (11th Cir. 2022) ("The Truth in Lending Act requires a servicer to send periodic statements, and the FDCPA requires those statements to be fair and accurate when they contain language that would induce a debtor to pay."); *Gonzalez v. Specialized Loan Servicing, LLC*, 691 F. Supp. 3d 1162, 1176 (C.D. Cal. 2023) ("The breach of an obligation to provide monthly statements does not somehow make the interest disallowed or unlawful." (quotation modified)).

Finally, Mr. Shelton claims the same failure to send periodic statements constitutes a "misleading representation or means in connection with the collection of any debt" by falsely representing the amount of the debt. 15 U.S.C. § 1692e; *see* ECF No. 1 at ¶ 97. It is not clear from the Complaint how the failure to provide billing statements transforms RTR's conduct into a "misleading representation." Generally, a violation of this section requires an affirmative misstatement, such as sending a bill for the wrong amount. *See, e.g.*, *McDermott v. Marcus, Errico, Emmer & Brooks, P.C.*, 911 F. Supp. 2d 1, 59 (D. Mass. 2012), *amended in part on other grounds*, 969 F. Supp. 2d 74 (D. Mass. 2013), *aff'd in part, rev'd in part and remanded on other grounds*, 775 F.3d 109 (1st Cir. 2014) ("Stating an incorrect amount of the debt undeniably violates section 1692e(2)(A)."); *Amezcua v. Pentagon Fed. Credit Union*, No. 21-cv-01641, 2022 WL 18142543, at *8 (C.D. Cal. May 3, 2022) (dismissing a claim for failing "to allege that there is any false, misleading, or inaccurate information on Defendants' account statements"); *cf. Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1218 (11th Cir. 2012) (holding that a law firm's letter demand for payment on a promissory note was debt-

collection activity within the meaning of the FDCPA). Mr. Shelton does not allege that RTR sent him *inaccurate* information; rather, he alleges it sent *no* information. The Complaint does not explain how silence or a lack of statements constitutes a "misleading representation" of the debt's character.

In sum, because the Complaint fails to allege facts showing that RTR's administrative filings or its failure to provide TILA notices constitute "collection activity" or "prohibited acts" under the statute, the FDCPA count fails to state a claim. RTR's motion to dismiss Count III is **GRANTED**.

## V. Violation of Mortgage Servicer's Duty of Good Faith (Count IV)

In Cout IV, Mr. Shelton alleges RTR violated its duty of good faith under Maine's mortgage servicer statute, 14 M.R.S. § 6113. Mr. Shelton contends RTR breached this duty by falsely claiming to be the holder of the Mortgage, recording deficient title documents, and opposing the Sheltons' bankruptcy plan. ECF No. 1 at 14–16. The Complaint pleads damages including Mr. Shelton's loss of opportunity to save his home through bankruptcy, increased costs and fees associated with the sale of the Property, emotional distress, and attorneys' fees. *Id*. at 16; *see* 14 M.R.S. § 6113(4)(A) ("A homeowner or obligor injured by a violation of the duty of good faith may bring an action against the mortgage servicer for all actual damages sustained by the homeowner or obligor."). RTR moves to dismiss this count on two grounds: first, that Mr. Shelton failed to allege "actual damages" resulting from the purported breach, ECF No. 18 at 20; and second, that he failed to plead facts establishing a "pattern or practice" of such violations, *id*. at 22; *see* 14 M.R.S. § 6113(4)(B).

Under 14 M.R.S. § 6113(4)(A), a homeowner injured by a violation of the duty of good faith may bring an action for "all actual damages sustained." RTR argues the

15

damages alleged are insufficient to state a claim. However, at the pleading stage, an injury "must actually exist," but it does not necessarily need to be "tangible." *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016). Accepting all reasonable inferences in Mr. Shelton's favor, the Court finds the Complaint adequately pleads damages. Mr. Shelton avers that RTR's bad-faith assertion as a lienholder directly interfered with both his bankruptcy proceedings and the sale of the Property, causing him to incur additional attorneys' fees and costs. ECF No. 1 at ¶ 109. Under Maine law, these types of specific financial and procedural setbacks are sufficient to constitute actual damages. *See Ross v. New Residential Mortg., LLC*, No. 23-cv-00255, 2024 WL 2187489, at *6 (D. Me. May 14, 2024).

RTR further contends Count IV must be dismissed because the Complaint does not establish a "pattern or practice" of misconduct. *See* 14 M.R.S. § 6113(4)(B) (permitting recovery of up to $15,000 "for a pattern or practice of the mortgage servicer's violating the duty of good faith"). The Court disagrees. Mr. Shelton has alleged that RTR's business model has historically drawn numerous consumer complaints, regulatory actions, and lawsuits alleging similar consumer protection violations. ECF No. 1 at ¶ 44. Taking those allegations in Mr. Shelton's favor, they are sufficient at this stage to plausibly suggest a broader pattern of conduct. *See McKay v. Fay Servicing, LLC*, No. 23-cv-00361, 2024 WL 3738302, at *4 (D. Me. Aug. 9, 2024) (holding allegations of a defendant's conduct in factually similar matters are relevant to pleading a pattern or practice under Maine mortgage servicer duty of good faith).

Accordingly, because Mr. Shelton has plausibly alleged both injury and a pattern of misconduct, the Court **DENIES** RTR's motion as to Count IV.

## VI.  Slander of Title (Count V)

The fifth and final count in Mr. Shelton's Complaint alleges RTR committed slander of title by improperly filing the Affidavit of Lost Assignment with the Registry of Deeds. ECF No. 1 at 16–17. RTR moves to dismiss this count, arguing that its claim to the Property did not impede Mr. Shelton's ability to sell it and noting RTR eventually agreed to discharge the Mortgage pursuant to a post-judgment stipulation in the 2023 Action. ECF No. 18 at 22.

To state a claim for slander of title under Maine law, a plaintiff must allege: "(1) there was a publication of a slanderous statement disparaging claimant's title; (2) the statement was false; (3) the statement was made with malice or made with reckless disregard of its falsity; and (4) the statement caused actual or special damages." *Colquhoun v. Webber*, 684 A.2d 405, 409 (Me. 1996). The Court finds Mr. Shelton has satisfactorily pleaded each of these four elements.

The Complaint alleges RTR asserted an invalid claim to the Property and failed to comply with Maine's statutory requirements for filing affidavits for lost assignments. *See* ECF No. 1 at ¶¶ 69–72. Mr. Shelton points to RTR's own legal billing statements as evidence that RTR knew it lacked a valid assignment; this supports a plausible inference that RTR's subsequent filings with the Registry of Deeds were, at a minimum, made with reckless disregard for the truth. *See id*. at ¶¶ 54–55.

Furthermore, Mr. Shelton has plausibly alleged damages. He asserts RTR's cloud on the title diminished the value of the Property during its sale, *see id*. at ¶ 116, and impaired his ability to reorganize his debts in the 2023 Action and bankruptcy action, *see* ECF No. 19 at 13. Unlike other cases where the plaintiff fails to provide "any facts to support that these statements were made with malice or reckless disregard," Mr. Shelton

17

has asserted sufficient facts to move past the pleading stage on this count. *Stine v. Bank of Am., N.A.*, No. 16-cv-109, 2016 WL 5135607, at *5 (D. Me. Sept. 21, 2016).

Accordingly, the Court **DENIES** RTR's motion to dismiss Count V.

## CONCLUSION

Defendant's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**. ECF No. 18. Defendant's motion to dismiss the FDCPA claim (Count III) is **GRANTED**. Defendant's motion to dismiss is **DENIED** as to all other counts.

**SO ORDERED.**

Dated this 6th day of March, 2026.

/s/ Stacey D. Neumann
**UNITED STATES DISTRICT JUDGE**