UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| CHRISTOPHER SHELTON,<br>Plaintiff,<br>v.<br><br>REAL TIME RESOLUTIONS, INC.,<br>Defendant. | CASE NO. 2:25-CV-00236 |

**OPPOSITION OF REAL TIME RESOLUTIONS, INC. TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT WITH INCORPORATED MEMORANDUM OF LAW**

Defendant Real Time Resolutions, Inc. ("RTR") opposes Plaintiff Christopher A. Shelton's Motion for Partial Summary Judgment on Count I (declaratory judgment) and on liability under Count IV (14 M.R.S. § 6113) (Doc. 45). RTR supports this opposition with its Opposing Statement of Material Facts and Statement of Additional Material Facts ("Add'l SMF"), the Affidavit of Real Time Resolutions, Inc., executed by David Rosas ("Rosas Aff."), and the Declaration of Joan M. Egdall ("Egdall Decl."), filed herewith.

**PRELIMINARY STATEMENT**

Plaintiff's motion asks the Court to make two findings that turn on contested facts and on RTR's state of mind. First, it asks for a declaration that RTR "does not have, and has never had," any right to the debt, the Mortgage, or the $115,000.00 held in the registry in United States v. Shelton, No. 2:23-cv-00173 (D. Me.) (the "2023 Action"). Second, it asks the Court to hold, without a trial, that RTR acted dishonestly in servicing the Loan.

Both requests depend on a set of Requests for Admission that Plaintiff contends were deemed admitted because RTR served its written responses late. RTR did serve them, denying or qualifying most of the matters Plaintiff now treats as conceded, after

asking for more time on the day they were due, and Plaintiff has had those responses since June 18, 2026. Several of those requests exceeded the 40-request limit in the Court's Scheduling Order. Without them, the motion rests on inferences that favor RTR at this stage, not Plaintiff.

RTR does not minimize the documentary gaps Plaintiff identifies. But the record also contains contemporaneous evidence that RTR acquired the Loan in October 2019, that servicing was transferred to RTR from the prior servicer, that the trust into which the Loan was securitized never asserted a competing interest, and that RTR acted throughout on the belief that it owned the Loan. Whether RTR owns the Loan, and whether it acted with honesty in fact, are questions to be addressed at trial. For these reasons, this Court should deny the Plaintiff's Motion for Partial Summary Judgment.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

### The Loan and Its Securitization

1. On December 8, 2006, Plaintiff borrowed $73,600.00 from Mortgage Lenders Network USA, Inc. ("MLN"), signed a note payable to MLN (the "Note"), and granted a mortgage on 314 Cousins Street, Yarmouth (the "Property") to Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for MLN (the "Mortgage") (Pl.'s SMF ¶¶ 1–2).

2. On or about February 28, 2007, according to RTR's records, the Loan was securitized and sold to Soundview Home Loan Trust 2007-1 (the "Trust"), for which Deutsche Bank National Trust Company served as trustee (Pl.'s SMF ¶ 5; Add'l SMF ¶ 1).

3. The original Note was held by Deutsche Bank as document custodian until on or about October 14, 2013, when it was transferred to Ocwen Loan Servicing, LLC ("Ocwen"), the Loan's servicer; it was later placed in storage, moved to Iron Mountain on or about January 20, 2017, and was destroyed on or about January 21, 2026 (Pl.'s SMF ¶ 18; Add'l SMF ¶¶ 2–3).

4. In late 2011, Plaintiff stopped paying, and on September 25, 2013, Ocwen charged off the Loan for accounting purposes (Pl.'s SMF ¶ 11). Plaintiff does not contend that he repaid the Loan or that any lender forgave it.

**RTR's Acquisition and Servicing of the Loan**

5. RTR's business records reflect that RTR acquired the Loan on or about October 17, 2019, and that servicing of the Loan was transferred to RTR from PHH Mortgage Services ("PHH") effective October 18, 2019 (Add'l SMF ¶ 4; Pl.'s SMF ¶ 13).

6. Onboarding the Loan, RTR received the prior servicer's loan data and payment history, which reflected an unpaid principal balance of $71,530.75 (Add'l SMF ¶ 5; Pl.'s SMF ¶ 13).

7. Within two weeks, RTR notified Plaintiff in writing that servicing had been transferred to it and that RTR had purchased the Loan on October 17, 2019, stating that the transfer of ownership had not been publicly recorded (Pl.'s SMF ¶¶ 13–14). RTR sent those notices because it understood that it had purchased the Loan (Add'l SMF ¶ 6).

8. From November 2019 through November 2024, RTR sent Plaintiff semi-annual early intervention letters, the written notices described in 12 C.F.R. § 1024.39(b), describing options to resolve the delinquent Loan, including a payment plan, a lien

release for less than the amount owed, and a short sale, and stating that RTR "may have a right to invoke foreclosure" (Pl.'s SMF ¶ 15; Add'l SMF ¶ 7). RTR never commenced a foreclosure (Add'l SMF ¶ 7).

9. Since RTR acquired the Loan, no other person, including Deutsche Bank, the Trust, MLN or its bankruptcy estate, Ocwen, or PHH, has asserted to RTR an ownership interest in the Loan or a right to Plaintiff's payments on the Loan (Add'l SMF ¶ 8).

**The 2023 Action and the Bankruptcy**

10. On April 18, 2023, the United States sued Plaintiff to reduce federal tax assessments to judgment and to foreclose its tax liens on the Property, naming MLN, MERS, and Deutsche Bank, as trustee for the Trust, among the defendants (Pl.'s SMF ¶ 32; Doc. 43-4, #1452, 1454).

11. Deutsche Bank, as trustee for the Trust, appeared in the 2023 Action through counsel, obtained an order on the priority of the first mortgage on the Property, which it held as trustee, and was paid on that mortgage from the sale proceeds, but it has not claimed any interest in the Loan or in the proceeds allocated to RTR (Add'l SMF ¶ 9).

12. RTR retained counsel to protect its interest in the 2023 Action. RTR's counsel prepared an Affidavit Regarding Lost or Misplaced Assignment (the "Affidavit"), which Mr. Rosas signed on October 25, 2023 after reviewing RTR's business records, and which RTR recorded on November 8, 2023 to give record notice of its claimed interest (Pl.'s SMF ¶¶ 25, 28; Add'l SMF ¶ 10).

13. On November 6, 2023, the court in the 2023 Action granted RTR's motion to substitute for MLN (Pl.'s SMF ¶ 33). On March 8, 2024, the court entered an order on a priority stipulation among the lienholders providing for payment of $110,000.00, later $115,000.00, to RTR toward its second mortgage (Pl.'s SMF ¶ 34).

14. On July 2, 2024, Plaintiff and his wife filed a Chapter 13 petition. RTR filed a proof of claim and an objection to confirmation, and on September 10, 2024, the Bankruptcy Court dismissed the case on Plaintiff's motion (Pl.'s SMF ¶¶ 35–36, 38).

15. On September 9, 2024, an RTR employee acting as a MERS signing officer executed an assignment of the Mortgage from MERS, as nominee for MLN, to RTR, which was recorded on September 10, 2024 (Pl.'s SMF ¶ 31; Add'l SMF ¶ 11).

16. On October 1, 2024, Plaintiff, the United States, RTR, and the other lienholders stipulated that the Property would be placed under contract by June 30, 2025, and that Plaintiff would pay RTR $1,025.00 a month until the sale, while reserving Plaintiff's right to challenge RTR's interest (Pl.'s SMF ¶ 39). Plaintiff made those payments until April 2025 (Pl.'s SMF ¶ 40).

17. Under the March 8, 2024 priority order, RTR claims only the $115,000.00 fixed by that order (Pl.'s SMF ¶ 43; Add'l SMF ¶ 12).

18. On July 1, 2025, the Property sold; the $115,000.00 allocated to RTR is held in the registry of the Court in the 2023 Action; and on July 9, 2025, RTR recorded a discharge of the Mortgage under orders entered in that action (Pl.'s SMF ¶¶ 41–43).

**This Action and the Requests for Admission**

19. On May 12, 2025, Plaintiff filed this action. On March 6, 2026, the Court denied RTR's motion to dismiss Counts I, II, IV, and V and dismissed Count III (Doc. 24).

20. On March 23, 2026, the Court entered a Scheduling Order that limited each side to 40 Requests for Admission (Doc. 26).

21. On April 15, 2026, Plaintiff's counsel emailed RTR's counsel 54 Requests for Admission, together with interrogatories, document requests, and Plaintiff's initial disclosures (Pl.'s SMF ¶ 44; Add'l SMF ¶¶ 13–14).

22. On May 15, 2026, the thirtieth day, RTR's counsel asked Plaintiff's counsel by email for a 30-day extension of time to respond. Plaintiff's counsel's paralegal replied that day that she had seen the request and that Plaintiff's counsel was out of the office. Plaintiff did not refuse the request or state that he would treat any request as admitted (Add'l SMF ¶ 15).

23. On June 18, 2026, RTR served written responses. RTR denied, among others, Request Nos. 1, 2, 10, 11, 14, 33, and 35; admitted Request Nos. 6, 8, 9, and 36; qualified its responses to others; and objected to Request Nos. 41 through 54 as exceeding the 40 requests permitted by the Scheduling Order (Doc. 38-2; Add'l SMF ¶ 16).

24. On July 30, 2026, with those responses in hand, Plaintiff took the Rule 30(b)(6) deposition of RTR and had RTR's designee identify them as RTR's answers to the Requests for Admission (Pl.'s SMF ¶ 45; Add'l SMF ¶ 17; Doc. 40-4 at 10:21–11:6). Plaintiff never notified RTR, before filing this motion, that he considered any request deemed admitted (Add'l SMF ¶ 18).

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge" ruling on summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. RTR accepts, for purposes of this motion, that once Plaintiff points to an absence of evidence on an issue on which RTR bears the burden, RTR must show an issue worthy of trial. Mulvihill v. Top-Flite Golf Co., 335 F.3d 15, 19 (1st Cir. 2003).

## ARGUMENT

### Plaintiff's Statement of Material Facts Exceeds the Agreed Limit

This Court should deny the Plaintiff's Motion for Partial Summary Judgment because Plaintiff's Statement of Material Facts does not comply with the summary judgment scheduling order, and this Court should disregard the paragraphs that exceed the agreed limit. The rule is that a party moving for summary judgment is bound by the limits on statements of material fact that govern the motion. In their Local Rule 56(h) submission, the parties represented that each would file no more than thirty statements of material fact with its motion for summary judgment, and that neither sought relief from the limits of Local Rule 7 (Doc. at 1). Local Rule 56(e) permits the opposing party to request that a statement of fact be stricken, while also admitting, denying, or qualifying it. In the instant case, the law makes clear that this Court should deny the Plaintiff's

Motion for Partial Summary Judgment because Plaintiff filed forty-nine statements of material fact, nineteen more than the parties agreed. The nineteen paragraphs beyond the agreed number include every fact on which Plaintiff relies for RTR's knowledge at the time of its bankruptcy filing (Pl.'s SMF ¶ 37), for the service and timing of his Requests for Admission (Pl.'s SMF ¶¶ 44–45), and for reasonable commercial standards (Pl.'s SMF ¶¶ 47–49). As permitted by Local Rule 56(e), RTR has stated in its Opposing Statement of Material Facts that Paragraphs 31 through 49 should be stricken, while also admitting, denying, or qualifying each of them. The Court should disregard those paragraphs. Therefore, for these reasons, this Court should disregard Paragraphs 31 through 49 of Plaintiff's Statement of Material Facts and deny the Plaintiff's Motion for Partial Summary Judgment. Even if the Court considers those paragraphs, the motion fails for the reasons that follow.

**The Motion Cannot Be Decided on Deemed Admissions**

This Court should deny the Plaintiff's Motion for Partial Summary Judgment because the facts on which the motion depends rest on deemed admissions that cannot carry Plaintiff's burden. The rule is that a matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves a written answer or objection, Fed. R. Civ. P. 36(a)(3), but the Court may permit a deemed admission to be withdrawn or amended if doing so would promote the presentation of the merits and would not prejudice the requesting party, Fed. R. Civ. P. 36(b). In the instant case, the law makes clear that this Court should deny the Plaintiff's Motion for Partial Summary Judgment because Plaintiff's Statement of Material Facts relies in ten of its paragraphs, in

whole or in part, on Requests for Admission that Plaintiff contends were deemed admitted when RTR served its responses after thirty days (Pl.'s SMF at 3 n.1). Those include every fact on which Plaintiff relies for RTR's knowledge at the time of its bankruptcy filings (Pl.'s SMF ¶ 37) and the only facts offered on reasonable commercial standards (Pl.'s SMF ¶¶ 47–49). As RTR shows below, none of those alleged deemed admissions carries the day. Therefore, for these reasons, this Court should deny the Plaintiff's Motion for Partial Summary Judgment.

**Requests 41 through 54 Exceeded the Limit Set by the Scheduling Order**

This Court should deny the Plaintiff's Motion for Partial Summary Judgment because Request Nos. 41 through 54 exceeded the 40-request limit set by the Scheduling Order, and this Court therefore cannot deem them admitted. The rule is that the Court has express authority to limit the number of requests for admission under Rule 36, Fed. R. Civ. P. 26(b)(2)(A), and a party may not unilaterally exceed a limit the Court has set. Requests served beyond such a limit should not impose an obligation to respond, and a party's failure to answer them should not result in the requests being deemed admitted. In the instant case, the law makes clear that this Court should deny the Plaintiff's Motion for Partial Summary Judgment because Plaintiff served requests the Scheduling Order did not permit. The Court's Scheduling Order limited each side to 40 Requests for Admission (Doc. 26). Plaintiff served 54. RTR timely objected on precisely this ground (Doc. 38-2). This objection resolves three paragraphs on which the motion relies. Plaintiff's only evidence that RTR has represented its compliance with Regulations X and Z and industry-standard practices is Request Nos. 52 through 54 (Pl.'s SMF ¶ 47), and his

only evidence of what reasonable commercial standards require is Request Nos. 50 and 51 (Pl.'s SMF ¶¶ 48–49). Those requests were the fiftieth through fifty-fourth. Plaintiff never properly served them, and this Court should not deem them admitted. Therefore, for these reasons, this Court should deny the Plaintiff's Motion for Partial Summary Judgment.

**The Remaining Admissions Do Not Support Summary Judgment**

This Court should deny the Plaintiff's Motion for Partial Summary Judgment because even if every request within the limit on which Plaintiff relies is treated as admitted, those admissions do not entitle Plaintiff to judgment. The rule is that a deemed admission establishes facts; it does not bind the Court on questions of law. Harrington v. Nashua, 610 F.3d 24, 31 (1st Cir. 2010). Moreover, whether a party honestly believed it was entitled to assert a claim is a question of fact for the jury. Downs v. Sawtelle, 574 F.2d 1, 13 (1st Cir. 1978). In the instant case, the law makes clear that this Court should deny the Plaintiff's Motion for Partial Summary Judgment because the admissions on which Plaintiff relies, taken as true, do not establish the facts the motion requires. As to the requests within the limit, RTR has filed a Request for Hearing under Local Rule 26(c) (Doc. 49), seeking leave to move under Fed. R. Civ. P. 36(b) to withdraw or amend any deemed admissions. This opposition does not depend on the outcome of that request. First, Request No. 3 asked RTR to admit that it "cannot satisfy the requirements of 11 M.R.S. § 3-1309," and Request No. 7 asked RTR to admit what 33 M.R.S. § 204 requires. RTR objected to both as calling for legal conclusions (Doc. 38-2, Resp. Nos. 3, 7). To the extent those requests state conclusions of law, they should not control the Court's

analysis. Second, the remaining admissions do not entitle Plaintiff to a declaration on Count I. Request Nos. 1 and 2 establish that RTR never possessed the Note and did not control it when it was destroyed (Pl.'s SMF ¶¶ 18–19). As discussed below, RTR's right to share in the proceeds of the sale does not depend on possession of the Note. Request Nos. 4 through 8 establish that no assignment from MLN to RTR was executed or recorded and that the Affidavit does not satisfy 33 M.R.S. § 204 (Pl.'s SMF ¶¶ 22, 29). RTR does not rely on an assignment from MLN or on the Affidavit as a conveyance. In addition, Request Nos. 10, 13, and 14 establish that the Loan was charged off before RTR acquired it (Pl.'s SMF ¶ 11). A charge-off is an accounting entry. It does not extinguish the borrower's obligation, and Plaintiff does not make any such claim. Third, the admissions on which Plaintiff bases his claim of dishonesty do not establish it. Request Nos. 33 and 35 establish that, when RTR filed its proof of claim, it did not possess the original Note and knew that the Note could not be located, and RTR admitted in its own responses that it also knew that a written assignment from MLN could not be located (Pl.'s SMF ¶ 37; Doc. 38-2, Resp. No. 36). Those facts concern RTR's filings in the bankruptcy case, which cannot support liability under § 6113 for the reasons discussed below. Moreover, knowing that the Note could not be located is not the same as knowing that RTR did not own the debt. RTR's position, as always, is that it bought the Loan in October 2019 (Add'l SMF ¶¶ 4, 6). Whether RTR honestly believed it was entitled to assert its claim is a question of fact for the jury. Once Request Nos. 41 through 54 are set aside and the remaining admissions are properly considered, Plaintiff's Statement of Material Facts does not establish the facts on which the motion relies, and the admitted facts do

not establish dishonesty or defeat RTR's claim to the proceeds. At a minimum, the Court should not enter judgment on admissions that are the subject of RTR's pending request for relief under Rule 36(b). Therefore, for these reasons, this Court should deny the Plaintiff's Motion for Partial Summary Judgment.

**Genuine Disputes of Material Fact Preclude Declaratory Judgment on Count I; The Record Contains Evidence That RTR Owns the Loan**

This Court should deny the Plaintiff's Motion for Partial Summary Judgment because the record contains evidence from which a reasonable factfinder could find that RTR owns the Loan. The rule is that the question at summary judgment is whether a reasonable factfinder could find in the non-movant's favor on the evidence that is in the record. Baum-Holland v. Hilton El Con Mgmt., LLC, 964 F.3d 77, 87 (1st Cir. 2020). Choosing between competing reasonable inferences is the function of the jury, not the Court. Anderson, 477 U.S. at 255. In the instant case, the law makes clear that this Court should deny the Plaintiff's Motion for Partial Summary Judgment because a jury could conclude from this record that RTR acquired the Loan in October 2019. Plaintiff asks the Court to declare that RTR has no right to the debt, the Mortgage, or the registry funds because the record lacks the documents by which the Loan passed from the Trust to RTR. But the record shows that the Loan was placed in a securitized trust for which Deutsche Bank was trustee, and that Deutsche Bank, as custodian, held the original Note until 2013 (Pl.'s SMF ¶ 18; Add'l SMF ¶¶ 1–2). That evidence supports the fact that the Loan was delivered to the Trust, notwithstanding the absence of a loan schedule from Plaintiff's

copy of the pooling and servicing agreement. The record then shows that servicing transferred from PHH to RTR effective October 18, 2019, that RTR boarded the prior servicer's loan data and payment history, and that RTR told Plaintiff within days that it had purchased the Loan on October 17, 2019 (Pl.'s SMF ¶¶ 13–14; Add'l SMF ¶¶ 4–6). Those notices were sent years before any dispute arose, and a factfinder may credit them as contemporaneous business records of the transaction they describe. Fed. R. Evid. 803(6). Finally, the record shows that the only other plausible claimant, the Trust, appeared in the 2023 Action through counsel, protected the first mortgage it held as trustee, and was paid on that mortgage from the sale proceeds, yet never asserted an interest in the Loan or in the proceeds allocated to RTR, and that no one else has done so since 2019 (Add'l SMF ¶¶ 8–9). Plaintiff answers that RTR has not produced a bill of sale or loan schedule. That is a fair point for cross-examination and argument at trial, but it goes to the weight of RTR's evidence, not to whether evidence exists. A jury could conclude from the custodial chain, the servicing transfer, the contemporaneous purchase notice, and the absence of any competing claimant that RTR acquired the Loan in October 2019. Choosing between that inference and Plaintiff's is within the purview of the jury. Therefore, for these reasons, this Court should deny the Plaintiff's Motion for Partial Summary Judgment.

**Ownership of the Debt Does Not Depend on Possession of the Note**

This Court should deny the Plaintiff's Motion for Partial Summary Judgment because ownership of the debt does not depend on possession of the Note, and Plaintiff's possession-based argument does not support the declaration he seeks. The rule is that

Maine's lost-instrument statute permits a person not in possession to enforce a lost or destroyed instrument only if, among other things, that person was in possession and entitled to enforce it when possession was lost. 11 M.R.S. § 3-1309(1). Section 3-1309, however, governs who may sue on a note as a negotiable instrument; it does not determine who owns the debt. Ownership of a note and the right to enforce it are different concepts. See 11 M.R.S. § 3-1203 cmt. 1. A sale of a promissory note transfers ownership to the buyer without delivery, and the buyer's interest is automatically perfected. 11 M.R.S. §§ 9-1109(1)(c), 9-1203, 9-1309(4). In the instant case, the law makes clear that this Court should deny the Plaintiff's Motion for Partial Summary Judgment because Plaintiff seeks far more than a ruling that RTR cannot sue on the Note under § 3-1309. Plaintiff argues that RTR cannot enforce the Note because it never possessed it, and, for purposes of this motion, RTR does not contend that it can satisfy the possession requirement of § 3-1309(1) (Pl.'s SMF ¶¶ 18–19). But Plaintiff is asking for a ruling that RTR "does not have, and has never had, an enforceable right to collect the debt," and that RTR has no right to any part of the funds held in the 2023 Action (Mot. at 12, 16). The right to those funds is governed by the orders entered in the 2023 Action, including the priority order (Pl.'s SMF ¶ 34), and by whether RTR owns the debt and the security interest. Because the parties dispute RTR's ownership, this Court cannot grant the relief Plaintiff requests. Therefore, for these reasons, this Court should deny the Plaintiff's Motion for Partial Summary Judgment.

**RTR Does Not Need to Be the Holder of the Note to Share in the Proceeds of the Sale**

This Court should deny the Plaintiff's Motion for Partial Summary Judgment because RTR's right to share in the proceeds of the sale in the 2023 Action does not depend on whether RTR is the holder of the Note. The rule is that, in an action brought under 26 U.S.C. § 7403 to enforce federal tax liens, the court must "finally determine the merits of all claims to and liens upon the property" and may decree "a distribution of the proceeds of such sale according to the findings of the court" as to the parties' interests. 26 U.S.C. § 7403(c). Under long-settled Maine law, "the security follows the debt." Tamir v. U.S. Trustee, No. 2:15-cv-00333-DBH, at 10–11 (D. Me. Jan. 22, 2016) (quoting Wyman v. Porter, 108 Me. 110 (1911)). A sale of a promissory note is governed by Article 9, and the buyer's interest attaches without delivery of the note. 11 M.R.S. §§ 9-1109(1)(c), 9-1203. Attachment of an interest in a right to payment secured by a mortgage is also attachment of an interest in the mortgage. Id. § 9-1203(7); see Tamir, at 12 (citing 11 M.R.S. § 9-1308 U.C.C. cmt. 6). The owner of the debt therefore holds the security for it. By contrast, a party seeking to foreclose must establish its ownership of the mortgage. Bank of Am., N.A. v. Greenleaf, 2014 ME 89, ¶¶ 14–17; Wilmington Sav. Fund Soc'y, FSB v. Cortellino, 2026 ME 49, ¶ 7. In the instant case, the law makes clear that this Court should deny the Plaintiff's Motion for Partial Summary Judgment because RTR is not suing Plaintiff on the Note, and it is not foreclosing. Plaintiff's argument about the Note rests on a mistaken premise: that RTR's right to the registry funds depends on whether RTR can sue on the Note as a negotiable instrument (Mot. at 8–11). The funds at issue are being

held by the Court in the 2023 Action, which the United States brought under § 7403 to enforce its tax liens. The question for distribution is whether RTR holds a lien interest in the Property and where it ranks, which turns on RTR's ownership of the secured debt and the Mortgage. It is not whether RTR is the "holder" of the Note or could bring an action to pursue the Note. 11 M.R.S. §§ 3-1301 and 3-1309. Tamir resolved this very question. There, the debtor argued that, under Greenleaf, his mortgage lenders could not hold secured claims because they lacked standing to foreclose. The Court rejected the argument, agreeing with the Bankruptcy Court that the possibility that the creditors "may not have standing to foreclose their mortgages on his properties is not a basis for determining the validity of their secured claims" where no foreclosure was pending. Tamir, at 11. Similarly, RTR is not foreclosing, and its right to share in the proceeds of a sale conducted by another lienholder does not depend on Greenleaf's rule about who may bring a foreclosure action. In Tamir, the creditors held the original notes. Id. at 12. RTR does not, but the principle does not depend on possession, because the buyer of a note acquires the debt, and the security for it, without delivery. The purpose of the lost-instrument rules confirms the point. Section 3-1309 bars judgment on a lost or destroyed instrument unless the obligor "is adequately protected against loss that might occur by reason of a claim by another person to enforce the instrument." 11 M.R.S. § 3-1309(2). The concern is that the obligor might have to pay twice. That risk is absent here. In January 2026, the Note was destroyed, so it can never be negotiated to a holder in due course (Add'l SMF ¶ 2). The only other person who could plausibly claim the Loan, Deutsche Bank as trustee for the Trust, appeared in the 2023 Action, is bound by the distribution

entered there, and has never asserted an interest in the Loan or in the proceeds allocated to RTR (Add'l SMF ¶¶ 8–9). Plaintiff therefore faces no risk that anyone will ask him to pay the debt twice. RTR acknowledges that the Law Court has declined to treat an original lender as holding a mortgage in equitable trust for the owner of the note. Beal Bank USA v. New Century Mortg. Corp., 2019 ME 150, ¶ 15. However, that decision, like Greenleaf and Cortellino, concerns standing to foreclose. None of those decisions addresses a creditor's right to share in the proceeds of a sale conducted by another lienholder, which is the question here and the question Tamir answered. See also U.S. Bank Nat'l Ass'n v. Gordon, 2020 ME 33, ¶ 15 (Horton, J., concurring) (describing the traditional Maine rule that a mortgage is "incident and collateral to the debt"). To the extent the Court concludes that ownership of the Mortgage is required, RTR addresses that question in the next section. In the end, whether RTR is the holder of the Note, which is the focus of Plaintiff's argument, is not a basis for declaring that RTR has no right to the funds held in the 2023 Action. Therefore, for these reasons, this Court should deny the Plaintiff's Motion for Partial Summary Judgment.

**Plaintiff Has Not Established That the MERS Assignment Is Void**

This Court should deny the Plaintiff's Motion for Partial Summary Judgment because Plaintiff has not established that the MERS assignment is void. The rule is that an assignment from MERS as nominee conveys only the right to record the mortgage as nominee, and that the party seeking to enforce a mortgage must establish its ownership of the mortgage. Greenleaf, 2014 ME 89, ¶¶ 14–17. Summary judgment may be entered only if there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a). In the

instant case, the law makes clear that this Court should deny the Plaintiff's Motion for Partial Summary Judgment because Plaintiff's record does not establish the premise on which his argument depends. RTR is not relying on its Affidavit as a conveyance under 33 M.R.S. § 204; the Affidavit provided notice to protect RTR's position in the 2023 Action (Add'l SMF ¶ 10). Plaintiff argues that the MERS assignment is a nullity because MERS's authority as agent ended when MLN, its principal, ceased to exist (Mot. at 11–12). But Plaintiff's evidence is only that MLN's bankruptcy case was closed in 2012 and that MLN ceased operating (Pl.'s SMF ¶ 27). Closing a bankruptcy case is not tantamount to the dissolution of a corporation. In fact, in Cortellino the Law Court accepted that mortgage rights originated by MLN remained property of MLN's bankruptcy estate years after the case closed, and upheld an assignment of such a mortgage executed in 2022 by a receiver appointed for MLN by the Delaware Court of Chancery. Cortellino, 2026 ME 49, ¶¶ 3–4, 7. Whether MLN's principal-agent relationship with MERS had terminated when the assignment was executed is, at a minimum, not established by Plaintiff's summary judgment record. U.S. Bank Nat'l Ass'n v. Richmond, on which Plaintiff relies, is an unpublished decision applying the record in that case and is currently on appeal. Therefore, for these reasons, this Court should deny the Plaintiff's Motion for Partial Summary Judgment.

## PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT ON LIABILITY UNDER COUNT IV

### Good Faith Is a Question of Fact for the Jury

This Court should deny the Plaintiff's Motion for Partial Summary Judgment because whether RTR acted in good faith under § 6113 is a question of fact for the jury. The rule is that Section 6113 requires a mortgage servicer to "act in good faith toward an obligor in the servicing of an obligation," and defines good faith as "honesty in fact and the observance of reasonable commercial standards of fair dealing." 14 M.R.S. § 6113(1)(A), (2). "'[T]he issue of good faith presents questions of fact which are peculiarly within the jury's province.'" Downs, 574 F.2d at 13. In the instant case, the law makes clear that this Court should deny the Plaintiff's Motion for Partial Summary Judgment because Plaintiff asks the Court to resolve both components of good faith, honesty in fact and the observance of reasonable commercial standards, on a paper record. As RTR shows below, the parties dispute the evidence on honesty in fact, and Plaintiff has not developed the record on reasonable commercial standards. Therefore, for these reasons, this Court should deny the Plaintiff's Motion for Partial Summary Judgment.

### Howe Confirms That Honesty in Fact Cannot Be Decided on This Record

This Court should deny the Plaintiff's Motion for Partial Summary Judgment because Wilmington Trust, N.A. v. Howe, on which Plaintiff relies to argue that RTR was not honest in fact (Mot. at 12, 14–15), shows why this Court cannot resolve that question on summary judgment. The rule, as applied in Howe, is that good faith presents a question of fact, and that honesty in fact turns on actual knowledge. The Court first

denied the borrower's motion for summary judgment on her § 6113 claim, recognizing that good faith presents a question of fact. Wilmington Tr., N.A. v. Howe, 2024 U.S. Dist. LEXIS 228373, at *37 (D. Me. Dec. 18, 2024) (quoting Downs, 574 F.2d at 13). After trial, the Court framed the honesty inquiry as whether the servicer "knew that [the owner] lacked an enforceable interest in the Mortgage," an inquiry into actual knowledge. Wilmington Tr., N.A. v. Howe, No. 2:21-cv-00278-SDN, 2026 U.S. Dist. LEXIS 207825, at *74 (D. Me. Sept. 15, 2026) (citing Me. Fam. Fed. Credit Union v. Sun Life Assur. Co. of Can., 1999 ME 43, ¶ 22, 727 A.2d 335), appeal filed (1st Cir. Oct. 13, 2026). In the instant case, the law makes clear that this Court should deny the Plaintiff's Motion for Partial Summary Judgment because Howe was decided on a full trial record and on facts unlike those here. The Court decided the claim only after a two-day bench trial, on findings made under Fed. R. Civ. P. 52(a) after hearing live testimony and weighing credibility. Id. at *1, *73–77. Plaintiff asks the Court to make the same finding here on a paper record, without hearing from RTR's witnesses. Howe also differs on the facts that drove the finding. The servicer there had knowledge from a court that the owner lacked an enforceable interest: a state court had dismissed the owner's earlier foreclosure action and rejected its equitable-trust theory, and the servicer authorized a motion to amend that judgment. Id. at *75. The owner had also represented to another court that it "cannot foreclose" without an assignment from the original lender. Id. at *73 n.17. Despite that knowledge, the servicer sent monthly statements warning of "foreclosure - the loss of [her] home" and sent an inspector onto the borrower's property. Id. at *76, *88. Nothing comparable exists here. No court has held that RTR lacks an interest in the Loan. To the

contrary, the court in the 2023 Action granted RTR's motion to substitute and entered a priority order providing for payment to RTR (Pl.'s SMF ¶¶ 33–34). RTR never represented to any court that it could not enforce its lien. Its letters were early intervention notices stating that RTR "may" have a right to foreclose, and RTR never foreclosed (Pl.'s SMF ¶ 15; Add'l SMF ¶ 7). Plaintiff's evidence of knowledge is that RTR knew the original Note and an assignment from MLN could not be located, together with a billing entry describing counsel's legal analysis (Pl.'s SMF ¶¶ 30, 37). Knowing that documents are missing is not knowing that one lacks an enforceable interest, which is the actual knowledge Howe required. Nor does Howe support Plaintiff's broader theory that "willful ignorance" suffices (Mot. at 14). At most, the record supports competing inferences about RTR's state of mind, and the choice between them belongs to the factfinder, as it did in Howe. Therefore, for these reasons, this Court should deny the Plaintiff's Motion for Partial Summary Judgment.

**Whether RTR Was Honest in Fact Is Disputed**

This Court should deny the Plaintiff's Motion for Partial Summary Judgment because the evidence of what RTR actually believed is in dispute. The rule is that honesty in fact is a subjective standard, as Plaintiff acknowledges (Mot. at 14). Plaintiff's own case law applies a subjective test that asks whether a party "acts with the truth and not for some ulterior motive." Reid v. Key Bank of S. Me., Inc., 821 F.2d 9, 14–15 (1st Cir. 1987). Where the evidence of a party's state of mind supports competing readings, the Court must adopt the reading favorable to the non-movant. Anderson, 477 U.S. at 255. In the instant case, the law makes clear that this Court should deny the Plaintiff's Motion for

Partial Summary Judgment because the record contains substantial evidence that RTR believed it owned the Loan. In October 2019, years before any litigation, RTR told Plaintiff that it had purchased the Loan (Pl.'s SMF ¶ 14; Add'l SMF ¶ 6). It boarded the Loan from the prior servicer's records, serviced it for five years, and was never confronted with a competing claim (Add'l SMF ¶¶ 5, 8). Its designee signed the Affidavit, prepared by counsel, after reviewing RTR's business records and in the belief that its statements were true, as he testified when Plaintiff examined him about it (Add'l SMF ¶ 10). Moreover, RTR's knowledge that the Note could not be located when it filed its proof of claim fails to establish dishonesty (Pl.'s SMF ¶ 37). Knowing that the instrument was missing is not knowing that RTR did not own the debt it evidenced, and RTR's claim to the proceeds did not depend on possession of the Note. Its semi-annual letters said that RTR "may" have a right to foreclose, and RTR never sought to foreclose (Pl.'s SMF ¶ 15; Add'l SMF ¶ 7). Those letters were the written early intervention notices described in 12 C.F.R. § 1024.39(b), and RTR modeled their foreclosure language on the model clause federal regulators provide for those notices (Add'l SMF ¶ 7). That clause states, without qualification: "We have a right to invoke foreclosure based on the terms of your mortgage contract." 12 C.F.R. pt. 1024, app. MS-4(D). RTR's letters said only that it "may" have that right. Plaintiff asks the Court to infer dishonesty from a billing entry in which RTR's counsel recorded time for "consideration of dual issues of lost note and lost assignment of mortgage" and "identified potential legal argument to put client in position to enforce note and mortgage" (Pl.'s SMF ¶ 30). A factfinder could read that entry, as Plaintiff does, as knowledge that RTR had no rights. It could also read it as an attorney's analysis of

how to document and assert an interest that the client believed it owned. On summary judgment, the Court must adopt the reading favorable to RTR. The Affidavit's reference to a lost assignment from MLN is likewise evidence that a jury may weigh, but it does not compel the conclusion that RTR's officer knew his statements were untrue. He signed a form prepared by counsel after reviewing RTR's records, including the file received from the prior servicer, and he believed it accurately described RTR's interest (Add'l SMF ¶ 10). Therefore, for these reasons, this Court should deny the Plaintiff's Motion for Partial Summary Judgment.

**RTR's Filings in the Bankruptcy Case Cannot Support Liability under Section 6113**

This Court should deny the Plaintiff's Motion for Partial Summary Judgment because RTR's filings in the bankruptcy case cannot support liability under § 6113. The rule is that the Bankruptcy Code has its own procedures and remedies for disputed or unsupported claims, including objections under 11 U.S.C. § 502 and sanctions under Fed. R. Bankr. P. 9011, and state-law claims premised on conduct in the bankruptcy claims process are preempted. In re Williams, 2017 Bankr. LEXIS 3957, at *2. This Court applied the same principle in this case in dismissing Plaintiff's FDCPA claim to the extent it rested on the proof of claim, recognizing that the Bankruptcy Code provides the remedy for an improper claim (Doc. 24 at 12). In the instant case, the law makes clear that this Court should deny the Plaintiff's Motion for Partial Summary Judgment because much of Plaintiff's honesty argument rests on RTR's proof of claim and objection to confirmation in the Chapter 13 case (Mot. at 15–16), and that conduct falls within the Bankruptcy

Code's exclusive remedial scheme. Plaintiff, who dismissed his own bankruptcy case rather than object to RTR's claim (Pl.'s SMF ¶ 38), cannot now claim a § 6113 violation based on it. Therefore, for these reasons, this Court should deny the Plaintiff's Motion for Partial Summary Judgment.

**Plaintiff Has Not Established a Failure to Observe Reasonable Commercial Standards**

This Court should deny the Plaintiff's Motion for Partial Summary Judgment because Plaintiff has offered no competent evidence of the reasonable commercial standards that RTR allegedly failed to observe. The rule is that good faith under § 6113 includes "the observance of reasonable commercial standards of fair dealing," 14 M.R.S. § 6113(2), and a borrower cannot carry its burden on that component without evidence of the governing standards. In Howe, even after a full trial, the Court held that the borrower had not carried her burden on this component because the record did "not contain sufficient evidence of prevailing industry standards or of how [the servicer's] policies and procedures deviated from those standards." 2026 U.S. Dist. LEXIS 207825, at *76. In the instant case, the law makes clear that this Court should deny the Plaintiff's Motion for Partial Summary Judgment because Plaintiff's argument on the second prong of good faith rests entirely on Requests 50 and 51 (Mot. at 16; Pl.'s SMF ¶¶ 48–49). For the reasons given above, those requests exceeded the Scheduling Order's limit and cannot be deemed admitted, and Plaintiff offers no other evidence, expert or otherwise, of the commercial standards that govern the servicing of a charged-off second-lien loan. Plaintiff thus offers less than the borrower in Howe. Plaintiff's own prayer for relief

recognizes the point: it asks the Court to leave "damages and liability as to the question of reasonable commercial standards to be determined at trial" (Mot. at 16). Therefore, for these reasons, this Court should deny the Plaintiff's Motion for Partial Summary Judgment.

**Plaintiff Has Offered No Evidence of Injury**

Finally, this Court should deny the Plaintiff's Motion for Partial Summary Judgment because Plaintiff has offered no evidence that any act of RTR caused him injury. The rule is that § 6113 provides a cause of action only to an obligor "injured by" a violation of the duty of good faith. 14 M.R.S. § 6113(4)(A). This Court treated injury as an element of the claim in denying RTR's motion to dismiss (Doc. 24 at 15–16). In the instant case, the law makes clear that this Court should deny the Plaintiff's Motion for Partial Summary Judgment because Plaintiff asks for judgment on "liability" while reserving damages for trial, but his Statement of Material Facts offers no evidence that any act of RTR caused him injury. The payments he made to RTR were made under a stipulation he entered with the United States and the other lienholders, which expressly preserved his challenge to RTR's interest (Pl.'s SMF ¶ 39). Without evidence of injury caused by the alleged violation, Plaintiff has not established liability. Therefore, for these reasons, this Court should deny the Plaintiff's Motion for Partial Summary Judgment.

**CONCLUSION**

For these reasons, RTR asks the Court to deny Plaintiff's Motion for Partial Summary Judgment in its entirety.

Dated: November 23, 2026

Respectfully submitted,

REAL TIME RESOLUTIONS, INC.,

By its attorneys,

/s/ Joan M. Egdall
Joan M. Egdall, Esq., Bar No. 9490
Demerle & Associates, P.C.
10 City Square
Boston, MA 02129
(617) 337-4444
JEgdall@DemerlePC.com

**CERTIFICATE OF SERVICE**

I certify that on November 23, 2026, I electronically filed this opposition with the Clerk of Court using the CM/ECF system, which will send notice of the filing to all counsel of record.

/s/ Joan M. Egdall
Joan M. Egdall, Esq.