UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| CHRISTOPHER SHELTON,<br><br>Plaintiff<br>v.<br><br>REAL TIME RESOLUTIONS, INC.,<br><br>Defendant | CASE NO. 2:25-CV-00236-SND |

**DEFENDANT REAL TIME RESOLUTION, INC.'S STATEMENT OF MATERIAL FACTS IN SUPPORT OF ITS CROSS MOTION FOR SUMMARY JUDGMENT**

Under Fed.R.Civ.P. 56 and D.Me.Loc.R.56(b), Defendant Real Time Resolution, Inc. states the following material facts:

1. On December 8, 2006, Plaintiff executed a promissory note to Mortgage Lenders Network USA, Inc. ("MLN") in the principal amount of $73,600 (the "Note"), secured by a second mortgage on the Property to MERS, solely as nominee for MLN and its successors and assigns, recorded December 14, 2006 at Book 24660, Page 205 (the "Mortgage"); the debt was due in full on January 1, 2022. (ECF No. 1: ¶ 20, #4; ECF No. 52, ##1596-1602.)
2. On the same date, Plaintiff granted a first mortgage on the Property, recorded at Book 24660, Page 184, later held by Deutsche Bank National Trust Company as trustee and serviced by PHH Mortgage. (ECF No. 52, #1575-1595, 1167, 1681.)

3. RTR's records reflect that the loan evidenced by the Note (the "Loan") was securitized and sold to Soundview Home Loan Trust 2007-1 (the "Trust"), for which Deutsche Bank National Trust Company ("Deutsche Bank") served as trustee, on or about February 28, 2007. (ECF No. 54-1: ¶ 4, #1723)

4. The original Note was held by Deutsche Bank as document custodian until on or about October 14, 2013, when it was transferred to Ocwen Loan Servicing, LLC ("Ocwen"); it was later placed in storage and transferred to Iron Mountain on or about January 20, 2017, and was inadvertently destroyed on or about January 21, 2026. (ECF No. 55-1: ¶ 5, #1723)

5. RTR's records reflect that RTR acquired the Loan on or about October 17, 2019, and that servicing of the Loan was transferred to RTR from PHH Mortgage Services ("PHH") effective October 18, 2019. RTR boarded the Loan from the prior servicer's loan data and payment history and, in October 2019, notified Plaintiff in writing of the servicing transfer and that RTR had purchased the Loan on October 17, 2019. (ECF No. 54-1: ¶¶ 6–8, #1723; ECF No. 40-4: 13:14–22, #1169, 28:3–11, #1184, 50:20–23, #1206; ECF No. 39-1, #838.)

6. From November 2019 through November 2024, RTR sent Plaintiff, approximately every six months, the written early intervention notices described in 12 C.F.R. § 1024.39(b), which described options to resolve the delinquent Loan and stated that the servicer may have the right to invoke foreclosure. RTR never commenced a foreclosure of the Mortgage. (ECF No. 54-1 ¶ 9, #1724; ECF No. 38-7, #660; ECF No. 38-9, ##665-823)

7. Since RTR acquired the Loan, no person, including Deutsche Bank, the Trust, MLN or its bankruptcy estate, Ocwen, or PHH, has notified RTR of any claim to own the Loan or to receive Plaintiff's payments on it. Deutsche Bank, as trustee for the Trust, appeared through counsel in *United States v. Shelton*, No. 2:23-cv-00173 (D. Me.) (the "2023 Action"), asserted the priority of the first mortgage, and was paid on that mortgage from the sale proceeds; it has not asserted any interest in the Loan or in the proceeds allocated to RTR. (ECF No. 54-1: ¶¶ 10–11, #1724; ECF No. 43-1, ##1434-1437.)

8. On October 25, 2023, after reviewing RTR's business records concerning the Loan, including records received from the prior servicer, RTR's Director of Loss Mitigation executed an Affidavit Regarding Lost or Misplaced Assignment prepared by RTR's counsel, recorded November 8, 2023 at Book 40468, Page 131 (the "Affidavit"), stating that RTR owns the Note and Mortgage and that the original assignment was lost or misplaced before recording. When he signed it, he believed that RTR owned the Loan. RTR recorded the Affidavit to give record notice of its interest in connection with the 2023 Action. (ECF 52: ##1657-1658; ECF No. 54-1: ¶ 12, ##1724-1725; ECF No. 40-2, ##1154-1155.)

9. On September 9, 2024, Wesley Owens, acting as a signing officer of MERS under authority MERS grants to its members, executed an assignment of the Mortgage from MERS, as nominee for MLN, to RTR, which was recorded on September 10, 2024 at Book 40982, Page 186. (ECF No. 40-3, #1156; ECF No. 40-9, #1661; ECF No. 54-1: ¶ 13, #1725; ECF No. 40-4: 38:16–39:1, #1194.)

10. On April 18, 2023, the United States commenced the 2023 Action against Plaintiff to collect federal tax liabilities and enforce tax liens against the Property, and on November 6, 2023, the court in that action granted RTR's motion to substitute for MLN. (ECF No. 1: ¶ 56, # 9; ECF No. 52, ##1654-1655; ECF No. 43-4: 2023 Action Docket Report, #1459.)

11. Plaintiff, the United States, RTR, and the other lienholders entered a Stipulation Regarding Priority of Lienholder Parties, which the court in the 2023 Action adopted by order entered March 8, 2024. The Stipulation placed RTR fourth in priority for $110,000, increasing to $115,000 if the Property sold after October 15, 2024, and reserved Plaintiff's right to challenge RTR's interest in the Property. (ECF No. 43-1, ##1434-1437; ECF No. 1: ¶¶ 59–60, #9.)

12. On October 1, 2024, Plaintiff, the United States, RTR, and the other lienholders entered a further stipulation in the 2023 Action providing that the Property would be placed under contract by June 30, 2025 and that Plaintiff would pay RTR $1,025 a month until the sale, again reserving Plaintiff's right to challenge RTR's interest. RTR received seven $1,025 payments under that stipulation, the last on or about April 17, 2025. (ECF No. 43-2, #1441; ECF No. 54-1: ¶ 15, #1725.)

13. Plaintiff and his wife filed a Chapter 13 petition on July 2, 2024, No. 24-20136 (Bankr. D. Me.), which was dismissed on Plaintiff's motion on September 10, 2024. Plaintiff states that the case "was dismissed because the government agreed to work with us on everything," that "[w]e never got a proposed plan of reorganization," and that "[t]here were no alternatives to dismissal." (ECF No. 1:

Compl. ¶¶ 51, 59, ##8,9; ECF No. 43-7, #1481; ECF No. 40-8: Ans. Nos. 8–9, ##1248-1249.)

14. Plaintiff sold the Property on July 1, 2025 for $985,000. From the proceeds, $204,492.56 was paid to PHH Mortgage Services, $26,854.50 to the judgment lienholders, $81,011.96 to the Treasurer, State of Maine, $486,027.28 to the United States Treasury, $15,146.35 to Molleur Law Office, and $9,748.97 to Plaintiff, and $115,000 was allocated to "Real Time Resolutions - 2nd Mortgage," which is held in the registry of the court in the 2023 Action. (ECF No. 40-8: Ans. No. 11, #1249; ECF No. 52: ##1680-1681; ECF No. 54-1: ¶ 14, #; 1725; ECF No. 43-3, ##1149-1150.)
15. Under the March 8, 2024 order in the 2023 Action, RTR claims only the $115,000 fixed by that order. (ECF No. 55-1: ¶ 14, 1725; ECF No. 43-3, ##1149-1150.)
16. RTR executed a Discharge of Mortgage on June 30, 2025, recorded July 9, 2025 at Book 41567, Page 323, and Plaintiff testified that all liens on the Property are discharged and that he is aware of no remaining liens. (ECF No. 50: #1666; ECF No. 54-1:¶ 16, #1725; ECF No. 40-8: Ans. No. 15, #1251.)
17. RTR sends Plaintiff a periodic mortgage statement every month. RTR sent Plaintiff, among others, mortgage statements dated December 6, 2024 and January 6, February 6, March 6, April 6, and May 6, 2025. (ECF No. 40-4: 16:6–18:6, #1172, 20:18–20, #1176, 21:15–21, #1177, 25:14–19, #1181; ECF No. 38-9, ##689-699.)

18. At all times since October 2019, RTR has serviced the Loan, communicated with Plaintiff, and asserted its claim in the 2023 Action and in Plaintiff's bankruptcy case in the belief that it owned the Loan. (ECF No. 54-1: ¶ 17, #1725.)

19. Plaintiff signed his interrogatory answers under penalty of perjury on August 11, 2026, and produced documents Bates-numbered SHELTON 001–134. (ECF No.52: ##1549-1682; ECF No. 40-8: Ans. No. 13, ##1250-1251; Counsel Decl. ¶ 12.)

20. Plaintiff testified that he received statements from RTR, "not monthly, maybe quarterly, and perhaps once a year," that "[b]oth my wife and I thought it was a scam," and that the statements "were sporadic, and I did not think they were legitimate." (ECF No. 40-8: Ans. Nos. 6–7, #1248.)

21. Plaintiff testified that he does not remember speaking to anyone from RTR and that he contacted Ocwen about RTR in approximately 2015. (ECF No. 40-8: Ans. No. 5, #1248.)

22. Plaintiff testified that RTR's statements began arriving after a HAMP modification in "2010 or 2012," and in describing his damages he stated no amount or computation for any category. (ECF No. 40-8: Ans. Nos. 3, 12, 16, ##1247, 1250, 1251-1252.)

23. Plaintiff claims "garden-variety emotional distress," identifies no health care provider or counselor, and will not offer expert or treating-provider testimony about his distress. (ECF No. 40-8: Ans. No. 13, ##1250-1251.)

24. Plaintiff testified: "I've never attempted to satisfy or modify this RTR debt because I never thought it was legitimate." (ECF No. 40-8: Ans. No. 16, ##1250-1251.)

25. Asked to identify documents supporting a loss of refinancing opportunities, Plaintiff objected and identified none; asked to identify attorney's fees and costs incurred in the bankruptcy case, the Stipulation, and this action, and supporting documents, Plaintiff objected and identified none. (ECF No. 40-8: Ans. Nos. 19, 24, ##1253, 1255.)

26. Asked to identify evidence supporting his cloud-on-title allegations, Plaintiff answered that RTR recorded a MERS assignment and an affidavit "that made it look like they had an interest in our property that I don't think they have/had." (ECF No. 40-8: Ans. No. 25, #1255.)

27. Asked for the basis of his malice allegation, Plaintiff identified paragraphs of the Complaint, the recorded instruments, and billing records filed by RTR's counsel in the bankruptcy case. (ECF No. 40-8: Ans. No. 17, #1252.)

28. Plaintiff's only description of RTR's conduct toward others is that "RTR has a terrible presence online" and that its online reviews "are horrifying," and Plaintiff does not plan to call any expert witness. (ECF No. 40-8: Ans. Nos. 12, 18, ##1250. 1252.)

29. Plaintiff testified that under the arrangement following the bankruptcy, "[p]art of our monthly payment went to the government, part to the mortgage, and part to RTR," which "was a way to satisfy all parties and allow us to remain in the home

until it sold," and that a balance remains on his federal tax liabilities. (ECF No. 40-8:. Ans. Nos. 8, 20. ##1248-1249, 1253.)

Respectfully submitted,

REAL TIME RESOLUTIONS, INC.,

By its attorneys,

/s/ Joan M. Egdall
Joan M. Egdall, Esq., Bar No. 9490
Demerle & Associates, P.C.
10 City Square
Boston, MA 02129
(617) 337-4444
JEgdall@DemerlePC.com

Dated: November 23, 2026